UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JULIA RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:21-cv-00191-JAW |
| | ) | |
| PHILLIP AUGUSTUS | ) | |
| CHENEVERT, II, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO STAY

A plaintiff has filed suit alleging that the defendant, a family friend, repeatedly sexually abused her when she was very young. The defendant moved to stay the civil action pending resolution of any related criminal action. Applying a multi-factor assessment under First Circuit law, the Court dismisses without prejudice defendant's motion to stay.

## I.   PROCEDURAL HISTORY

On July 9, 2021, Julia Russell filed a two-count complaint against Philip Augustus Chenevert, II, in the United States District Court for the District of Maine alleging assault and battery and intentional infliction of emotional distress. *Compl.* at 3 (ECF No. 1). On August 5, 2021, Mr. Chenevert filed a motion to stay the case pending resolution of any related criminal prosecution. *Mot. to Stay* (ECF No. 8) (*Def.'s Mot.*). On August 6, 2021, Ms. Russell responded in opposition to Mr. Chenevert's motion to stay the case. *Pl.'s Opp'n to Def.'s Mot. to Stay* (ECF No. 9) (*Pl.'s Opp'n*). Mr. Chenevert replied to Ms. Russell's opposition on August 17, 2021.

*Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Stay* (ECF No. 10) (*Def.'s Reply*).  On August 17, 2021, Mr. Chenevert filed a motion to extend time to file his answer to the Complaint pending resolution of the motion to stay.  *Mot. to Extend Deadline to File Answer Pending Resolution of Mot. to Stay* (ECF No. 11).  The Court granted Mr. Chenevert's motion on August 18, 2021.  *Order* (ECF No. 13).  Finally, on September 21, 2021, Mr. Chenevert filed a motion for leave to supplement his motion to stay. *Def.'s Mot. for Leave to Suppl. the Record on Def.'s Mot. to Stay* (ECF No. 15) (*Def.'s Suppl.*).  The Court granted Mr. Chenevert's request to supplement the record that same day.  *Order* (ECF No. 16).

## II.   FACTS

Ms. Russell alleges that between the ages of six and eight years old, Mr. Chenevert, who was a family friend, repeatedly sexually abused her.  *Compl.* ¶¶ 16-17. Mr. Chenevert grew up with Ms. Russell's father and regularly visited the Russell household when she was a child.  *Id.*  ¶¶ 11, 13. Ms. Russell says that Mr. Chenevert began looking for ways to spend time with her but that because he was a family friend, Ms. Russell's parents implicitly trusted him, and thought nothing of Mr. Chenevert spending time with her alone.  *Id.* ¶ 16.  Ms. Russell submits that during the period of abuse, which lasted from 1992-1994, Mr. Chenevert's conduct included, among other things, "teaching" Ms. Russell how to French kiss, exposing himself to Ms. Russell, coaxing her to touch his exposed genitalia, and performing oral sex on Ms. Russell.  *Id.* ¶¶ 17-18.  On July 25, 2021, a *Portland Press Herald* article about Ms. Russell's civil lawsuit states that Ms. Russell filed a criminal complaint against Mr. Chenevert with the Biddeford Police Department.  *See Def.'s Mot.*, Attach. 1, *Bill*

*Nemitz: For Almost Three Decades, She Kept Her Secret.  No Longer*, at 5 (*Press Herald Article*).  The article goes on to say that the "Biddeford Deputy Chief . . . declined to discuss the case or even confirm that there is an investigation."  *Id.*

### III.    THE PARTIES' POSITIONS

#### A.    Philip Chenevert's Position

In his motion, Mr. Chenevert "requests a stay pending further order of the Court . . . to preserve [his] Fifth Amendment privilege in the event of a criminal prosecution based on the alleged occurrences described in the complaint, which the Plaintiff recently reported to the Biddeford Police Department."  *Def.'s Mot.* at 1.  Mr. Chenevert submits that if the Court does not stay the proceeding he will either have to "waiv[e] his Fifth Amendment privilege, subjecting him to the danger that information obtained in this case will be used in a criminal prosecution" or "invoke[e] his Fifth Amendment privilege, hampering his ability to adequately defend himself and potentially subjecting him to an adverse inference from his assertion of privilege."  *Id.* at 4.  He acknowledges that he "has not yet been notified of any formal criminal proceedings" but submits that "the York County District Attorney's Office has proven itself willing to prosecute cases based on decades-old allegations of sexual abuse" and "[a]n indictment could return at any time."  *Id.* at 5-6.

Mr. Chenvert further argues that while "all litigants . . . share an interest in expeditious resolution of a lawsuit . . . the 'protection of defendant's constitutional rights against self incrimination is the more important consideration,'" *id.* at 6 (quoting *Green v. Cosby*, 177 F. Supp. 3d 673, 681 (D. Mass 2016)), which is "especially so here, where [Ms.] Russell waited many years to file her Complaint."  *Id.*  Thus "a

comparatively modest stay of proceedings is unlikely to cause any prejudice that will outweigh Mr. Chenevert's interest in preserving his Fifth Amendment privilege." *Id.* at 7.

## B.    Julia Russell's Position

Relying on the so-called *Microfinancial, Inc.* factors, Ms. Russell argues that the relevant considerations weigh against granting Mr. Chenevert's motion to stay. *Pl.'s Opp'n* at 2-3; *see also Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004).  First, she argues that she has "a clear interest in proceeding expeditiously" because Mr. Chenevert "is now 72 years old, and a stay . . . could prejudice [her] ability to hold [him] accountable in court . . . and could provide [him] with the opportunity to dissipate his assets." *Id.*

Second, Ms. Russell contends that Mr. Chenevert lacks a compelling interest to warrant a stay of the case because there "is not a parallel criminal proceeding . . . [and] no evidence before this Court that [he] will be imminently indicted, or even that he will be indicted at all." *Id.* at 4.  Additionally, Ms. Russell submits that because the state of Maine no longer has a statute of limitations for "prosecution[s] of incest, rape or gross sexual assault" for victims under the age of sixteen at the time of the crime,  Mr. Chenevert's dilemma of "whether to waive his Fifth Amendment privilege . . . will not abate over time," noting that courts "are, and should be, reluctant to grant stays where the moving party is unable to point to a time at which the party will be safe from prosecution." *Id.* at 4-5.

4

Third, Ms. Russell argues that the issue of convenience to the civil and criminal courts weighs in her favor because "a stay will needlessly clog up this Court's docket." *Id.* at 5.

Fourth, "the public has an interest in prompt resolution of civil cases" and Mr. Chenevert has "offered nothing to offset that presumption." *Id.* at 6 (quoting *Microfinancial, Inc.*, 385 F.3d at 79 n.4).

Finally, as to the status of the cases, Ms. Russell restates that the "criminal case that undergirds this motion is non-existent." *Id.*

## C. Philip Chenevert's Reply and Supplement

In reply, Mr. Chenevert states that his age should not be a consideration because it was "[Ms. Russell's] own decision to wait approximately seventeen years after reaching the age of majority to file her lawsuit." *Def.'s Reply*. Moreover, he reasons that she will not be prejudiced by a stay because she "can always file a motion to lift the stay upon a showing that the York County District Attorney appears uninterested in pursuing her complaint." *Id.*

Second, Mr. Chenevert argues that "[e]ven though the argument would be more forceful if [he] were already under indictment, an indictment is not a requirement to a stay." *Id.* at 2. Additionally, he suggests that it is unlikely that the York County District Attorney's office will sit on this case and that "[t]o the contrary, a stay of this action will likely prompt the York County District Attorney to decide whether or not to prosecute [the] case." *Id.* at 3.

Third, Mr. Chenevert asserts that the "'convenience to the court' factor does not overcome the need for a stay" because he "moved for a stay at the earliest

opportunity, before any significant judicial resources had been devoted to the case." *Id.* (quoting *Microfinancial, Inc.*, 385 F.3d at 79).

Fourth, he argues that the public interest does not weigh against a stay because "the public interest benefits from safeguarding a litigant's Fifth Amendment privilege." *Id.*

Fifth, Mr. Chenevert contends that the status of the case weighs in favor of a stay because the "case is in its infancy, which is the opportune time to stay the matter." *Id.* at 4.

Sixth, Mr. Chenevert states that "the request for a stay was brought in good faith" as "another factor supporting a stay." *Id.*

Finally, in his motion to supplement, Mr. Chenevert notes that on September 21, 2021, his counsel, Attorney Smith, emailed District Attorney Kathryn Slattery to confirm whether the York County District Attorney is pursuing criminal charges against Mr. Chenevert. *Def.'s Suppl.*, Attach. 1, *Email* at 1-2. Attorney Slattery responded that "[a]ll [she] can tell [Attorney Smith] at this point is that [the District Attorney had] noted [Attorney Smith's] appearance for Mr. Chenevert." *Id.* In his motion to supplement, Mr. Chenevert contrasts Attorney Slattery's response to his inquiry regarding Mr. Chenevert with her response in another case where she confirmed that there was an investigation but specified that her office would not be prosecuting because "there was not enough evidence to prove the charges 'beyond a reasonable doubt.'" *Def.'s Suppl.* at 2. Mr. Chenevert argues that the difference in

response "is all the more reason to believe that a criminal prosecution is forthcoming" and for the Court to grant his motion to stay. *Id.*

## IV.   LEGAL STANDARD

The seminal First Circuit case on whether a court should stay a civil action while a parallel criminal case is being resolved is *Microfinancial, Inc.* According to *Microfinancial, Inc.*, federal courts "possess the inherent power to stay proceedings for prudential reasons," including when there is a pending parallel criminal proceeding. *Microfinancial, Inc.*, 385 F.3d at 77. However, there is "no constitutional right to stay [a civil proceeding] simply because a parallel criminal proceeding is in the works." *Id.* at 77-78. As a result, courts have discretion in deciding whether to grant a stay in a civil case pending resolution of a criminal proceeding. *Id.* at 77. However, "deference to parallel criminal proceedings should be invoked when the interests of justice counsel in favor of such a course." *Id.* at 78.

Whether to grant a stay is "highly nuanced" and requires the court to balance competing interests, "look[ing] at the idiosyncratic circumstances of the case before it." *Id.* In their analysis, the First Circuit has directed courts to consider the following competing interests:

> (i) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (ii) the hardship to the defendant, including the burden placed upon him should the case go forward in tandem; (iii) the convenience of both the civil and criminal courts; (iv) the interests of third parties; and (v) the public interest[;] . . . (vi) the good faith of the litigants (or the absence of it)[;] and (vii) the status of the cases.

*Id.* at 78. "Another factor a court should consider, which has been described as '[t]he most important factor,' is 'the degree to which the civil issues overlap with the

criminal issues.'" *Sea Salt, LLC v. Bellerose*, No. 2:18-cv-00413-JAW, 2020 U.S. Dist. LEXIS 84075, at *4 (D. Me. May 13, 2020) (quoting J. Milton Pollack, *Parallel Civil & Criminal Proceedings*, 129 F.R.D. 201, 203 (1989)) (alterations in *Sea Salt, LLC*). Ultimately, a movant "carr[ies] a heavy burden to succeed in [persuading the court to grant a stay]." *Microfinancial, Inc.* 385 F.3d at 77.

## V.   DISCUSSION[1]

### A.   Factor 1: The Interests of the Plaintiff

Courts recognize that plaintiffs have a clear interest in the expeditious resolution of a case. *Id.* at 78; *Sea Salt LLC*, 2020 U.S. Dist. LEXIS 84057, at *4. Ms. Russell is no different. Ms. Russell notes that "[Mr. Chenevert] is now 72 years old," and she contends that "a stay of this action could prejudice [her] ability to hold her abuser accountable in court." *Pl.'s Opp'n* at 3. However, Ms. Russell offers no evidence that Mr. Chenevert is in ill health or would otherwise be unable to defend himself in a civil suit. Nor has this Court found any caselaw—and Ms. Russell cites none—supporting the proposition that a defendant's age alone weighs in favor of the plaintiff in a court's stay analysis.

The Court is similarly unpersuaded by Mr. Chenevert's argument that Ms. Russell will not be prejudiced by a stay in her civil action because there was an approximately seventeen-year delay between when Ms. Russell reached the age of majority and when Ms. Russell filed her complaint. *Def.'s Reply* at 1. The Court does not accept Mr. Chenevert's premise, namely that Ms. Russell's delay in bringing this

---

[1]      The Court does not address the third factor, the interests of third parties. This factor does not appear relevant and neither party briefed it.

lawsuit justifies further delay now she has brought it.  To the contrary, Ms. Russell's delay in filing her complaint does not minimize Ms. Russell's current interest in an expeditious resolution to the case.  Assuming that Ms. Russell's claim is not barred by any statute of limitations,[2] the fact she brought her claim now rather than when she was a minor or soon after she came of age does not negate her interest in the timely resolution of the case once commenced, especially since she was within her rights to delay the commencement of this lawsuit under 14 M.R.S. § 752-C.  *See Angell v. Hallee*, 2012 ME 10, ¶ 6, 36 A.3d 922 ("Currently there is no limitation of actions based on sexual acts toward minors"); *Girard v. Dodd*, No. 2:16-cv-00165-LEW, 2019 U.S. Dist. LEXIS 129294, at *11-13 (D. Me. Aug. 2, 2019); *Keene v. Me. Dep't of Corr.*, No. 1:17-cv-403-JDL, 2018 U.S. Dist. LEXIS 61412, at *7-10 (D. Me. Apr. 11, 2018); *Guptill v. Martin*, 228 F.R.D. 62, 64 (D. Me. 2005) (explaining that 14 M.R. S. § 752-C "lifted any statute of limitations for claims based a sexual acts against minors").

---

[2]    Maine is not alone in eliminating or expanding its statute of limitations for childhood sexual abuse.  *See e.g.*, DEL. CODE ANN. Tit. 10, § 8145(a); CAL. CIV. PRO. CODE 340.1(a); N.Y.C.P.L.R. § 214-g.  Legislatures have recognized that victims of childhood sexual abuse may experience memory repression, may not understand what happened to them until later in life, may not know at the time of the abuse that they are eligible to bring a claim in civil court, and even as an adult, may still be reluctant to bring suit because of the intrusiveness of litigation, the fact that the lawsuit is sometimes against a someone the plaintiff and her family know well, and the claim involves highly personal matters, all of which may delay filing a civil complaint.  *See e.g.*, *Petersen v. Bruen*, 792 P.2d 18, 23 (Nev. 1990) (discussing the emotional complexity of confronting an abuser); Theodore R.A. Ovrom, *Reasonable for Whom? Developing a Mores Sensible Approach to the Discovery Rule in Civil Actions Based on Childhood Sexual Abuse*, 103 IOWA L. REV. 1843, 1861-62 (2018) (discussing the unique effects of childhood sexual abuse); Rebecca L. Thomas, *Adult Survivors of Childhood Sexual Abuse and Statutes of Limitations: A Call for Legislative Action*, 26 WAKE FOREST L. REV. 1245, 1249 (1991) (explaining that reporting childhood sexual abuse can be embarrassing or shameful and especially complicated when the abuse involves family members). In view of the reasons implicit in Maine's elimination of the statute of limitations in cases involving allegations of child sexual abuse, the Court views with skepticism Mr. Chenevert's contention that Ms. Russell's case should be further delayed because she did not bring it earlier.

Second, Mr. Chenevert contends that Ms. Russell will not be prejudiced by a stay because she "can always file a motion to lift the stay upon a showing that the York County District Attorney appears uninterested." *Id.* The Court sees two problems with this argument. First, it improperly shifts the burden from Mr. Chenevert, the movant, to Ms. Russell, the respondent. Mr. Chenevert bears the burden to demonstrate that a stay is necessary; Ms. Russell does not bear the burden to demonstrate it is unnecessary. *See Microfinancial, Inc.*, 385 F.3d 72, at 77. A stay is not the default result when there is parallel litigation, but rather, it is only warranted when justice so requires. *Id.* at 78. In fact, the First Circuit has characterized staying a civil proceeding as "extraordinary relief." *Id.* at 79.

Second, the burden that Mr. Chenevert would foist on Ms. Russell may be unattainable. For practical reasons, prosecutors typically do not inform civil litigants about the exact progress of their investigations and they rarely publicly declare that they are "uninterested" in pursuing an investigation of potential criminal activity. Although as the victim of the alleged crime, Ms. Russell might generate more solicitude from the local district attorney's office, there is no evidence in this record that the York County District Attorney has promised to keep Ms. Russell advised of the status of its criminal investigation so that she would be able to pursue her civil action.

### B.      Factor 2: Hardship to Defendant

When a defendant is subject to parallel criminal and civil proceedings, he may be prejudiced by the invocation of the Fifth Amendment in civil discovery. *Sea Salt, LLC*, 2020 U.S. Dist. LEXIS 84075, at *5. The United States Supreme Court has held

that "the privilege to remain silent absent a grant of immunity is not available to one who does not face criminal prosecution by the federal government or state government." *GLL GmbH & Co. Messeturm KG v. Lavecchia*, No. 07-174-B-H, 2008 U.S. Dist. LEXIS 11825, at *4 (D. Me. Feb. 15, 2008) (quoting *United States v. Balsys*, 524 U.S. 666, 689 (1998)).  Thus, parallel civil and criminal litigation may prejudice a defendant in two ways: (1) "unlike in a criminal case, an adverse inference may be drawn from the invocation of privilege" in a civil case, and (2) "invoking the Fifth Amendment privilege prevents the defendant from adequately defending his position in the civil case." *Sea Salt*, *LLC*, 2020 U.S. Dist. LEXIS 84075, at *5 (quoting *Green v. Cosby*, 177 F. Supp. 3d 673, 679 (D. Mass. 2016) (internal quotation marks omitted)).

The "strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." *Id.* at *4-5 (quoting *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y 1993)).  "While pre-indictment stays of parallel civil proceedings occasionally have been granted, an unindicted defendant who argues that going forward with a civil proceeding will jeopardize his Fifth Amendment rights usually presents a much less robust case for such extraordinary relief." *Microfinancial, Inc.* 385 F.3d at 79 (internal citations omitted).

Here, Mr. Chenevert, relying on *Green v. Crosby, Sea Salt, LLC v. Bellerose*, and *SEC v. Liberty*, argues that if the Court does not stay the case, he will be placed in the impossible position of either invoking his Fifth Amendment privilege in the

civil case and receiving an adverse inference from the invocation of privilege or waiving his Fifth Amendment privilege and potentially having information obtained in the civil case used against him in any future criminal case. *Def.'s Mot.* at 4.

However, Mr. Chenevert's concern is speculative at best as he "has not yet been notified of any formal criminal proceedings . . . [and admits that] it is possible that the York County District Attorney's office will decline prosecution." *Id.* at 5-6. There are no facts alleged in the Complaint that suggest that criminal prosecution is imminent, and, as just noted, Mr. Chenevert concedes that he has not even been contacted by the York County District Attorney's Office.[3]  Instead, Mr. Chenevert relies solely on the complaint Ms. Russell made to the Biddeford Police Department, as reported by the *Portland Press Herald*.  In other words, Mr. Chenevert has not identified a potential claim beyond stating that there is a "'remote possibility' of [a] criminal proceeding." *Lavecchia*, 2008 U.S. Dist. LEXIS 11825, at *5; *see also In re Worldcom, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2002 U.S. Dist. LEXIS 23172, at *14 (S.D.N.Y. Dec. 5, 2002) ("Courts in this district have generally refused to stay a civil proceeding where the defendant has not been indicted but is under criminal investigation"); *In re New Eng. Compounding Pharm., Inc.,* No. 13-2419-RWZ, 2015 U.S. Dist LEXIS 199090, at *58 (D. Mass. July 31, 2015)); *contra D.R. v. Bigda*, No. 3:20-cv-30085-MGM, 2021 U.S. Dist. LEXIS 52067, at *8-9 (D. Mass. Mar.

---

[3]     The Court is similarly unconvinced that it should base a stay on the suggestion that "the York County District Attorney's Office has proven itself willing to prosecute cases based on decades-old allegations of sexual abuse." *Def.'s Mot.* at 5-6 (citing *State v. Paquin*, 2020 ME 53, ¶¶ 3-4, 230 A.3d 17 (appeal from a conviction based on charges based on sexual abuse in the mid- to late-1980s)).  Every case is different and without more the Court will not infer anything from the District Attorney's past exercise of prosecutorial discretion.

18, 2021) (granting a motion to stay because "[t]he prejudice to [the defendant was] not theoretical").

While Mr. Chenevert correctly notes that an indictment is not required to stay a case, he also concedes that an indictment makes the justification for a stay more compelling. *See Def.'s Reply* at 2; *Microfinancial, Inc.* 385 F.3d at 79. Mr. Chenevert points to a handful of cases to support his proposition that the present case should be stayed despite the lack of indictment, but none of these cases is persuasive and each is distinguishable.

First, Mr. Chenevert relies on *Sea Salt, LLC v. Bellerose*. In *Sea Salt*, the magistrate judge stayed discovery in a civil case where a defendant was the target of a federal criminal investigation. *Sea Salt*, *LLC*, 2020 U.S. Dist. LEXIS 84075, at *2. The plaintiff was communicating with the FBI about the defendant's alleged money laundering and was planning to meet with the FBI to discuss the case. *Id.* The plaintiff also "intended to file an amended complaint to include money laundering allegations and to provide the FBI with the pleadings." *Id.*

While the *Sea Salt* defendant was not formally charged, there was a greater level of certainty as to the likelihood of an impending indictment than in this case. While Ms. Russell and the plaintiff in *Sea Salt* complained to the authorities, the fact of a complaint alone does not suggest an "impending prosecution."

Moreover, the *Sea Salt* plaintiff engaged in ongoing communications with the FBI and had plans to meet with the FBI to discuss the claims further. By contrast, the record in this case is absent of any such ongoing discussions, investigations, or

13

collaboration between Ms. Russell and the police department or district attorney's office, which weighs against a finding of imminent prosecution. Additionally, Ms. Russell has not sought leave to amend the complaint to include documents related to criminal prosecution, nor is there evidence that Ms. Russell gave a copy of the Complaint in this civil action to the Biddeford Police or the district attorney, which the magistrate judge found to be particular relevant in *Sea Salt*. *See id.* at *5. While the *Sea Salt* defendant had not yet been indicted when the court granted the stay, there were indicia of future prosecution beyond the mere speculation present in this case.

Additionally, the Court is not convinced by the evidence Mr. Chenevert presents in his motion to supplement his motion to stay. In that motion, he urges that the difference in the district attorney's inquiry response between his case and another case is evidence that prosecution is forthcoming. This is speculative at best and would require the Court to make several analytical leaps it is unwilling to take. Mr. Chenevert is asking this Court to infer that such a difference in response is evidence of looming prosecution, when it could reflect nothing more than an investigative timing difference or an internal policy allowing the district attorney to publicly comment on some investigations but not others. Speculative inferences about the inner workings of the York County District Attorney's Office cannot form the basis for a finding of hardship.

Second, Mr. Chenevert relies on *Green v. Cosby*. In *Green*, the court agreed to partially stay a case where "Defendant was charged with aggravated indecent assault

in Montgomery County, Pennsylvania, based on allegations of sexual misconduct which [were] similar, but separate, from those at issue in [the] case." *Green*, 177 F. Supp. 3d at 676. Mr. Chenevert also cites *Zavtasky v. O'Brien*, 902 F. Supp. 2d 135, 148 (D. Mass. 2012), which involved a defendant who had already been indicted, even though the indictments were for "facially unrelated" issues," because "indictments are susceptible to amendment and ultimately both the civil and criminal cases against [the defendant] charge corruption and the exchange of political favors." *Id.* Both these cases are easier to distinguish than *Sea Salt,* as the defendants in each case had been indicted when the motion to stay was filed. Here, there has been no indictment and in fact no criminal charge at all, nor is there anything more than a specter of possible prosecution on the horizon.

Ultimately, this case is more akin to the facts of *Microfinancial, Inc.*, where the court rejected the defendant's motion to stay in part because, although the district attorney had advised the defendants "that they were subjects of a grand jury investigation," no indictment had been handed down. 385 F.3d at 79. If prosecution is too speculative to warrant a stay when a case has gone before a grand jury, without indictment, then Mr. Chenevert's arguments surely fail here, not only has there been no indictment, but also there is nothing on the record indicating the case has been or is about to be presented to a grand jury.

While Mr. Chenevert is correct that if there were parallel proceedings, he would have to choose whether to invoke his Fifth Amendment rights, at this stage in the proceedings, this is nothing more than a theoretical burden. In absence of an

indictment, or in *Sea Salt*, evidence strongly suggesting an active investigation such that an indictment could be reasonably anticipated, Mr. Chenevert has not demonstrated anything more than speculative hardship, which fails to meet his burden under the *Microfinancial, Inc.* factors.

### C.    Factor 3: Convenience to the Courts

The First Circuit recognizes that "trial judges must work a complicated equation, balancing fairness to the parties with the need to manage crowded dockets." *Microfinancial, Inc.*, 385 F.3d at 79. Where there are no formal charges, "the delay of the civil action could be indefinite and a delay over which the Court has no control." *Sea Salt, LLC*, 2020 U.S. Dist LEXIS 84075, at *6; *see also Microfinancial, Inc.*, 385 F.3d at 79. This weighs against a stay. *See Sea Salt, LLC*, 2020 U.S. Dist LEXIS 84075, at *6; *see also Microfinancial, Inc.*, 385 F.3d at 79. Like the *Sea Salt* defendant, Mr. Chenevert offers no timeline for how long a stay should last, which, as noted in *Sea Salt*, weighs in favor of denying Mr. Chenevert's motion. *See Sea Salt, LLC*, 2020 U.S. Dist LEXIS 84075, at *6.

However, unlike in *Sea Salt*, where the parties knew that the FBI was actively investigating, there is an additional layer of "unknowns" in this case, because there is no clear evidence that the York County District Attorney is actively pursuing a case against Mr. Chenevert. Thus, there is no time estimate as to when Mr. Chenevert will know one way or the other whether he is going to be prosecuted. This added "unknown" as to whether Mr. Chenevert is even the subject of a criminal investigation weighs against a stay, as granting such a stay could indefinitely leave the case a matter pending on the Court's docket. *See Microfinancial, Inc.*, 385 F.3d

16

at 79 ("Here, the case is weakened further because the defendants' motion papers did not inform the court of when the investigation started, how long it was expected to last, or any other facts that might tend to suggest that an indictment was more than a remote possibility"). This factor weighs against granting a stay, as the Court has an interest in not permitting this case to remain on the docket indefinitely pending some indication from the York County District Attorney's office that it does or does not intend to prosecute Mr. Chenevert.

### D. Public Interest

The First Circuit has stated that there is a "presumption that the public has an interest in prompt resolution of civil cases" and that the defendant bears the burden of "offer[ing] [evidence] to offset that presumption." *Microfinancial, Inc.* 385 F.3d at 79 n.4. However, the magistrate judge in *Sea Salt* also stated that "[t]he public has an interest not only in the efficiency of the judicial process, but also in the preservation of an individual's ability to defend in a meaningful way against both criminal charges and civil claims." *Sea Salt, LLC*, 2020 U.S. Dist. LEXIS 84075, at *6-7. However, these two statements are not at odds, as Mr. Chenevert has offered no evidence that he cannot meaningfully defend this civil claim, as there is no evidence of an indictment or an impending indictment, and thus no pending criminal charges. In the absence of this evidence, there is nothing in this record to offset the presumption that the public has an interest in the judicial resolution of this civil case in an expedient manner or to suggest that the public has a greater interest in Mr. Chenevert's ability to defend against a hypothetical prosecution than it does in a swift civil proceeding.

17

In *Green*, the court granted a stay because the public's interest "may be [at least partially] vindicated through the ongoing . . . criminal proceedings" in part because the criminal and civil proceedings were similar. *Green*, 177 F. Supp. 3d at 682. Similarly, in *Adams v. Magnusson,* the court determined that the "public interest in assuring that the criminal matter . . . proceeds to a conclusion without any delay that might be generated by the participation of [case participants] . . . in a parallel civil proceeding weighs in favor of a stay." *Adams v. Magnusson*, No. 1:19-cv-00547-GZS, 2020 U.S. Dist. LEXIS 93355, *4 (D. Me. May 28, 2020). In this case, however, because there is no pending criminal case, there are no existing, non-speculative public rights to be vindicated through the stay of the civil case. The public interest favors denying Mr. Chenevert's motion to stay, because the expeditious resolution of this case is, at the moment, the clearest way to preserve the public's interest.

### E.   Good Faith of Litigants

In Mr. Chenevert's reply he states that his motion was brought in good faith, and that "[t]he fact that [his] motion is brought in good faith is not equivocal; instead, it is another factor to support a stay." *Def.'s Reply* at 4. While Mr. Chenevert is correct that Ms. Russell is not challenging his good faith, *see Pl.'s Opp'n* at 3 n.1, he misinterprets the sixth *Microfinancial, Inc.* factor by suggesting that his good faith supports a stay. *Def.'s Reply* at 4. The sixth factor specifically considers the good faith of the "litigants" (plural), which means that the Court must also consider Ms. Russell's good faith in opposing the motion to stay. *Microfinancial, Inc.*, 385 F.3d at 78. Just as Mr. Chenevert has acted in good faith, he does not dispute, nor is there

18

any evidence to suggest, that Ms. Russell has not similarly acted in good faith. This factor therefore weighs in neither party's favor.

### F.      Status of the Cases

Mr. Chenevert is correct that like *Green* and unlike *Microfinancial, Inc.*, he has requested a stay early in the life of the case, which weighs in favor of a stay. *See Green*, 177 F. Supp. 3d 673 at 681; *Microfinancial, Inc.*, 385 F.3d at 79; *Def.'s Reply* at 3. However, in *Green* there were other considerations to take into account, as the defendant had actually been indicted, and because it was certain that the criminal case was proceeding the court saw opportunities to "modify or dissolve the stay based on developments in the criminal case." *Green*, 177 F. Supp. 3d at 681; *see also Adams*, 2020 U.S. Dist. LEXIS 93355, *4 (stating that "some discovery and scheduling issues would likely be avoided if the civil matter is stayed until the completion of the criminal matter"). In Mr. Chenevert's case, without the assurance of a parallel criminal case, these same benefits may not accrue. The record is devoid of any indication that a parallel criminal case is, in fact, imminent. The mere fact that the civil case is young does not justify a stay in light of the theoretical prejudice to Mr. Chenevert.

### G.      Overlap Between the Civil and Criminal Cases

Finally, "[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct . . . [because] the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *SEC v. Liberty*, 2019 U.S. Dist. LEXIS 133505, at *6 (D. Me. Aug. 8, 2019) (quoting *Trs. of Plumbers & Pipefitters*

*Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)); *Sea Salt, LLC*, 2020 U.S. Dist. LEXIS 84075, at *5.  For example, in *D.R. v. Bigda*, the court stayed a civil case in part because the civil and criminal cases derived from the same events, relied on identical witnesses and evidence, both proceedings were extensively covered by the media, and the court was aware of both the criminal charges and civil claims.  *Bigda*, 2021 U.S. Dist. LEXIS 52067, at *6-7; *see also Adams*, 2020 U.S. Dist. LEXIS 93355, at * 3 (holding that the "issues in the civil and criminal matters . . . overlap significantly"); *Green*, 177 F. Supp. 3d at 681 (stating that "while the specific events directly at issue in this case and in the criminal case do not necessarily overlap, the court nonetheless concludes that, in the absence of a stay of discovery addressed to him, Defendant will face 'the quandary of choosing between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case.'" (quoting *Transworld Mech., Inc.*, 886 F. Supp. at 1140)).

Based on the *Portland Press Herald* article attached to Mr. Chenevert's motion to stay, there could be a significant overlap between the facts of this case and any criminal prosecution.  *See Press Herald Article.*  However, given this Court's view that the criminal prosecution is speculative at best, it would be inapposite to stay the case based on a theoretical overlap between the present case and any hypothetical criminal proceeding that may arise in the future.  Of course, if Mr. Chenevert is charged criminally, he may wish to reinitiate his request for a stay based on changed circumstances.   This does not mean that if Mr. Chenevert is prosecuted, the Court will necessarily grant a future motion to stay this civil proceeding.  It means only that

the Court's calculus of the *Microfinancial, Inc.* factors would be slightly different because the prosecution would no longer be hypothetical, and the Court would have before it the charges actually brought. Therefore, the Court is dismissing without prejudice Mr. Chenevert's motion to stay with the understanding that he may renew the motion again if circumstances change.

## VI.   CONCLUSION

In sum, the *Microfinancial, Inc.* factors do not weigh in favor of granting Mr. Chenevert's motion to stay the case. Mr. Chenevert has failed to meet his burden of proving that he would be actually prejudiced were this case to proceed. The Court DISMISSES without prejudice Mr. Chenevert's motion to stay (ECF No. 8), and ORDERS Mr. Chenevert to answer the Complaint within fourteen days of the date of this order, as required by the Court's August 18, 2021 Order (ECF No. 13).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of November, 2021