UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JULIA RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-191-JAW |
| | ) | |
| PHILLIP AUGUSTUS | ) | |
| CHENEVERT, II | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION IN LIMINE**

A plaintiff has filed a lawsuit against a person she says sexually abused her when she was young. Applying the provisions of Federal Rule of Evidence 415 and First Circuit caselaw, the Court grants the plaintiff's motion in limine to admit the testimony of two other women who are prepared to testify that this defendant committed similar acts of sexual abuse against them when they were young.

**I.     BACKGROUND**

**A.     Procedural Background**

On July 9, 2021, Julia Russell filed a complaint in this Court against Phillip Augustus Chenevert, II, contending that between 1992 and 1994, when she was between six and eight years old, Mr. Chenevert sexually abused her. *Compl.* (ECF No. 1) (*Compl.*). Mr. Chenevert denies that he committed the alleged abuse. *Answer* (ECF No. 18) (*Answer*). Ms. Russell has sued Mr. Chenevert for assault and intentional infliction of emotional distress. *Compl.* ¶¶ 19-26. In addition to compensatory damages, Ms. Russell seeks punitive damages. *Id.* ¶ 26.

On May 20, 2022, Ms. Russell filed a motion in limine, seeking a court order allowing the admission into evidence of similar acts of child molestation allegedly perpetrated by Mr. Chenevert against two other females when they were young. *Mot. in Lim. to Admit Evid. of Similar Acts of Child Molestation and Notice of Intent to Use Such Evid.* (ECF No. 30) (*Pl.'s Mot.*).   On June 10, 2022, Mr. Chenevert objected to the admission of this evidence. *Def.'s Resp. to Pl.'s Mot. in Lim. to Admit Similar Acts of Child Molestation* (ECF No. 32) (*Def.'s Opp'n*).   On June 16, 2022, Ms. Russell filed a reply. *Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. in Lim. to Admit Evid. of Similar Acts of Child Molestation* (ECF No. 33) (*Pl.'s Reply*).

### B.   Factual Background

#### 1.   The Allegations in the Complaint and the Answer

In her Complaint, Ms. Russell alleges that Mr. Chenevert had grown up with her father. *Compl.* ¶ 11 .   In 1992, Mr. Chenevert moved from Massachusetts to Biddeford Pool, Maine. *Id.* ¶ 11.   Mr. Chenevert owned and operated Dr. Volvo, a used car dealership in Arundel, Maine. *Id.* ¶ 8.   The Russell family lived in Saco, Maine, and Mr. Chenevert regularly came to visit the Russells. *Id.* ¶¶ 6, 13.   Ms. Russell alleges that between 1992 and 1994, when Ms. Russell was between six and eight years old, Mr. Chenevert repeatedly sexually abused her. *Id.* ¶ 17.   Ms. Russell alleges that Mr. Chenevert abused her at her home in Saco, at his home in Biddeford Pool, in his boat while moored at Biddeford Pool, and in his office at Dr. Volvo. *Id.* Ms. Russell acknowledges that she "kept the abuse a secret for decades," *id.* ¶ 2, but that she had decided to "come forward and hold her abuser accountable." *Id.* ¶ 3.   As

2

noted earlier, Mr. Chenevert denies that he committed the alleged abuse. *Answer* ¶¶ 1-23.

### 2. The Bill Nemitz July 25, 2021, Portland Press Herald Article

On July 25, 2021, Bill Nemitz, a Portland Press Herald columnist, published a four-page article entitled, "For almost three decades, she kept her secret. No longer." *Pl.'s Mot.* Attach. 1, *Bill Nemitz*: *For almost three decades, she kept her secret. No longer.* at 1-4. The Nemitz article contained details about Ms. Russell's allegations against Mr. Chenevert and encouraged victims of sexual violence to report the violence. *Id.* at 2.

### 3. Rebecca Schick's July 25, 2021, Email to Bill Nemitz

During the evening of July 25, 2021, the day that the Nemitz article appeared, Rebecca Schick emailed Mr. Nemitz, stating that she too had grown up in Biddeford Pool and had been sexually abused for many years by Mr. Chenevert. *Pl.'s Mot.* Attach. 4, *Rebecca Schick Email to Bill Nemitz* (Jul. 25, 2021). She asked Mr. Nemitz to pass along this information to Ms. Russell's family and said she would be willing to testify in court. *Id.*

### 4. Alex Hennedy's July 26, 2021, Email to Julia Russell

The next day, July 26, 2021, Alex Hennedy directly emailed Julia Russell. *Pl.'s Mot.* Attach. 5, *Alex Hennedy Email to Julia Russell* (Jul. 26, 2021). Ms. Hennedy wrote that she too had been molested by Mr. Chenevert, that their stories were

similar, and that she was "willing to tell my experience to anyone and everyone in order to support your case against him." *Id.* at 1.

## II.    THE PARTIES' POSITIONS

### A.    The Plaintiff's Motion in Limine

In her motion in limine, Ms. Russell seeks a pretrial order, confirming the admissibility under Federal Rules of Evidence 415(a) and 404(b) of the testimony of Ms. Schick and Ms. Hennedy about acts of sexual molestation by Mr. Chenevert similar to those alleged by Ms. Russell. *Pl.'s Mot.* at 1.

Ms. Russell alleges that Mr. Chenevert sexually abused her when she was between six and eight years old (between 1992 and 1994). *Id.* at 4. She said that it "started as horseplay. Phil liked to chase us around and tickle us and I remember him tickling me and lifting me up and putting my crotch to his mouth and blowing hot air through my pants." *Id.* (quoting *Id.* Attach. 3, *Dep. of Julia Russell* at 44:17-20) (*Russell Dep.*). Ms. Russell says that the abuse "escalated over time" and that Mr. Chenevert performed sexual acts on her, including asking Ms. Russell to touch his penis, placing his penis against her buttocks, and performing oral sex on her. *Id.* Ms. Russell recalls being abused on Mr. Chenevert's boat and at his business, Phil's Auto Center. *Id.* at 4-5.

Ms. Schick's family moved to Biddeford Pool in January 1993,[1] when she was about seven. *Id.* at 5 (citing Attach. 9, *Dep. of Rebecca McHenry Schick* at 5:22-27;

---

[1]    The cited deposition testimony states that Ms. Schick's family moved to Maine in January 1994, not 1993, *see Schick Dep.* at 5: 7-8, however, for the purposes of explaining Ms. Russell's argument, the Court uses 1993, as stated in her motion.

6:12-16) (*Schick Dep.*).  The summer after they moved to Maine, Ms. Schick's parents met Mr. Chenevert at a party, and Mr. Schick became a close friend of Mr. Chenevert. *Id.* (citing *Schick Dep.* at 17:15-25).  Mr. Chenevert sexually abused Ms. Schick when she was between the ages of eight and twelve.  *Id.* (citing *Schick Dep.* 12:24-13:3; 13:8-11).  Ms. Schick states that their relationship began friendly but developed into a more intimate sexual one.  *Id.* (citing *Schick Dep.* at 10:9-18).  Mr. Chevenert asked Ms. Schick to kiss him "on the lips with tongue." *Id.* (quoting *Schick Dep.* at 10:22-11:5).  Subsequently the conduct escalated with each touching each other's genitals and performing oral sex on each other.  *Id.* (citing *Schick Dep.* at 12:15-23).  Mr. Chenevert's sexual abuse took place at his home, at his business and on his boat.  *Id.* at 6 (citing *Schick Dep.* at 13:15-19).

Ms. Hennedy's parents were friends of Mr. Chenevert when she was a child. *Id.* at 6.  In 1997, when Ms. Hennedy was about eight years old, Mr. Chenevert was sitting on a couch with her at Ms. Hennedy's home, when he "slipped his hand down the neck of my shirt and fondled my breasts."   *Id.* Attach. 2, *Dep. of Alexandra Hennedy* at 12:18-13:4,  18:7-13) (*Hennedy Dep.*).   Ms. Hennedy reported the encounter to her mother and Mr. Chenevert was not allowed to be with Ms. Hennedy alone.  *Id.* at 7.  Then, in 1999, when Ms. Hennedy was nine or ten years old, Mr. Chenevert demanded a kiss from Ms. Hennedy and she felt his tongue in her mouth. *Id.* (citing *Hennedy Dep.* at 18-21-19:6).  After that Ms. Hennedy avoided Mr. Chenevert "like the plague" and no other incidents of abuse took place.  *Id.* (quoting *Hennedy Dep.* at 26:7, 28:3-6).

Discussing caselaw on Rules 415 and 404(b), Ms. Russell urges the Court to admit the testimony of both Ms. Schick and Ms. Hennedy. *Id.* at 7-14.

### B.    The Defendant's Opposition

In response, Mr. Chenevert first challenges Ms. Hennedy's description of the incident. *Def.'s Opp'n* at 1-3. Mr. Chenevert points out that Ms. Hennedy's mother recalled the incident as a tickling and that she told Mr. Chenevert not engage in "tickle games" with Ms. Hennedy in the future. *Id.* at 2-3 (quoting Attach. 1, *Dep. of Christiane Provencher-Hennedy* at 10:12-13:8) (*Provencher-Hennedy Dep.*). Mr. Chenevert argues that the tickling incident was non-sexual and that as of eight years old, Ms. Hennedy had not yet experienced any breast development. *Id.* at 3. As regards Ms. Schick, Mr. Chenevert points out that Ms. Schick's recollection of these events is imperfect, and he notes that she has struggled with substance abuse issues. *Id.* at 3-4. Mr. Chenevert argues that this evidence should be excluded under Rule 403 as more prejudicial than probative. *Id.* at 4-8.

### C.    The Plaintiff's Reply

In her reply, Ms. Russell disputes Mr. Chenevert's argument that because Ms. Hennedy had not experienced any breast development at age eight, his actions in touching her chest could not amount to something sexual or within the purview of Rule 415. *Pl.'s Reply* at 2. She also disagrees with Mr. Chenevert's assertion that tickling cannot be sexual. *Id.* at 2-3. Ms. Russell observes that Mr. Chenevert's attempts to discredit the recollections of Ms. Schick and Ms. Hennedy are the subject of cross-examination rather than exclusion. *Id.* at 3-5.

6

## III.   DISCUSSION

### A.   The Definition of "Breast" Incorporated Within Rule 415

Federal Rule of Evidence 415(a) provides:

> **(a) Permitted Uses.**  In a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation.  The evidence may be considered as provided in Rules 413 and 414.

FED. R. EVID. 415(a).  Rule 415(a)'s reference to Rule 414 incorporates the definition

of child and child molestation contained in its criminal law counterpart:

> **(d) Definition of "Child" and "Child Molestation."** In this rule and Rule 415:
>
> **(1)**      "child" means a person below the age of 14; and
>
> **(2)**      "child molestation" means a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving:
>
> **(A)** any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;
>
> **(B)** any conduct prohibited by 18 U.S.C. chapter 110;
>
> **(C)** contact between any part of the defendant's body—or an object—and a child's genitals or anus;
>
> **(D)** contact between the defendant's genitals or anus and any part of a child's body;
>
> **(E)** deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or
>
> **(F)** an attempt or conspiracy to engage in conduct described in subparagraphs (A)–(E)

FED. R. EVID. 414(d).  Rule 415(a)'s reference to Rule 413 echoes these definitions and specifies that other acts evidence may be admissible in sexual assault cases.  *See* FED. R. EVID. 413(a).

The Court firmly rejects Mr. Chenevert's attempt to define his way out of the reach of Rule 415(a) by contending that because Ms. Hennedy was eight years old at the time of the alleged conduct, she was too young to have had any breast development.  Mr. Chenevert's argument implicitly refers to the statutory definition of sexual conduct in federal criminal law, 18 U.S.C. chapter 109A, which is incorporated by Rule 414(d)(2)(A) and Rule 413(d)(1).  This general reference to 18 U.S.C. chapter 109A includes 18 U.S.C. § 2246(3)'s definition of sexual contact:

> **(3)** the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246(3).  Seizing on the word, "breast," and noting that at eight years old, Ms. Hennedy did not have breasts, Mr. Chenevert argues that the sexual contact definition does not apply to his actions in touching her chest.

Such an absurd, restrictive interpretation would eliminate most children, all males, and most females, from Rule 415(a)'s definition of this type of sexual contact. As biological females who have not reached puberty do not have breasts, under Mr. Chenevert's argument, they would not come within Rule 415 when a person touched their chests for sexual gratification.  Nor would the Rule reach any of this type of conduct against any male child, regardless of age.  Thus, under Mr. Chenevert's

8

thinking, for purposes of touching a minor's chest for sexual gratification, Rule 415(a) would apply only to biologically female children who had begun to attain puberty, a narrow and variable age range of perhaps eight to thirteen depending on the girl, leaving the youngest and most vulnerable outside the scope of the Rule.

This argument runs contrary to the language of Rule 414(d)(1), which defines child without limitation as a person "below the age of 14." FED. R. EVID. 414(d)(1). Under Mr. Chenevert's interpretation, for purposes of touching a child's chest for sexual gratification, the Rule, contrary to its definition, would apply only to biological females who have breast development, a narrow subcategory of victims inconsistent with the obvious intent of the Rule.

It also runs against the statutory scheme, which enhances penalties for sexual contact with a minor under the age of twelve. Under 18 U.S.C. § 2241(c), a person who crosses state lines for the purpose of engaging in a sexual act with a child under the age of twelve faces a mandatory minimum term of incarceration of thirty years. Thus, the statutory scheme contemplates greater protection for the youngest minors. *See* 18 U.S.C. § 2244(c) (doubling the maximum term of incarceration if the victim is under the age of twelve).

Furthermore, as here, to apply the Rule, Mr. Chenevert's interpretation would also require a court to make an assessment of the degree of a female child's breast development at the time of the alleged sexual contact, a manifestly invasive, irrelevant, and inappropriate role for the federal court.

"Breast" has two relevant definitions. The first is the female mammary gland; the second is the "front part of the body from the neck to the abdomen; chest." *Breast*, RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1987). As Rule 415(a) is meant to apply to sexual contact with all children, the Court concludes that Rule 415(a) incorporates both definitions. For biologically female children, who have developed breasts, the first definition applies. For all other children, the second, more general definition applies. *See United States v. Mays*, No. 8:06-cr-514-T-23-MSS, 2007 U.S. Dist. LEXIS 46132, at *7 (M.D. Fla. June 26, 2007) (applying Rule 415(a) to the touching of a "typically, physically immature" eight-year-old female's chest).

### B.    The Application of Rule 415(a) to the Facts in This Case

The seminal case in the First Circuit, interpreting Rule 415(a) is *Martinez v. Hongyi Cui*, 608 F.3d 54 (1st Cir. 2010). After noting that Rule 415 had been adopted as part of the Violent Crime Control and Enforcement Act of 1994, the First Circuit observed that the "drafters' purpose was to supersede Rule 404(b)'s prohibition on evidence of like conduct showing propensity in sexual assault cases." *Id.* at 59. Significantly, the First Circuit wrote that "[w]e agree with the conclusion, universal among the courts of appeals, that nothing in Rule 415 removes evidence admissible under that rule from Rule 403 scrutiny. *Id.* at 60. The *Martinez* Court acknowledged that "evidence that Rules 413-415 make admissible--evidence of similar sexual assaults by the defendant--can well be the kind of inflammatory, unduly complex evidence courts often exclude under Rule 403." *Id.* Nevertheless, the First Circuit declined to "adopt special rules constraining district courts' usual exercise of

10

discretion under Rule 403 when considering evidence under Rule 415." *Id.* At the same time, district courts "must apply Rule 403 with awareness that Rule 415 reflects a congressional judgment to remove the propensity bar to admissibility of certain evidence." *Id.*

Applying these principles in *Martinez*, the First Circuit upheld the district court's exclusion of the proffered Rule 415 evidence on two grounds: (1) the two incidents were too dissimilar, and (2) to prove the "other act" evidence, the trial court would have had to allow a "'minitrial,' indeed something 'in the nature of a maxitrial.'" *Id.* at 61.

Following *Martinez*, the First Circuit has dealt with Rule 415 and its criminal counterpart, Rule 414, on four occasions: *United States v. Gaudet*, 933 F.3d 11 (1st Cir. 2019); *United States v. Majeroni*, 784 F.3d 72 (1st Cir. 2015); *United States v. Joubert*, 778 F.3d 247 (1st Cir. 2015); *United States v. Jones*, 748 F.3d 64 (1st Cir. 2014). In *Jones*, the First Circuit made short work of the defendant's argument that the admission of the other acts evidence was unfairly prejudicial because it allowed the jury to infer that he "had a propensity to act like a 'child molester.'" 784 F.3d at 70. In response, the First Circuit wrote, "Not true." *Id.* The First Circuit explained that to be admissible, the other acts evidence must "still pass muster under Rule 403." *Id.* "But when tackling the problem, judges must be ever mindful that Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation cases. And because Rule 414 flags this propensity inference as proper, we cannot

brand the inference as <u>unfairly</u> prejudicial under Rule 403." *Id.* at 70-71 (emphasis in original) (citations omitted).

Still the *Jones* Court warned that "[e]ven if no unfair prejudice arises solely because the evidence rests on propensity, that hardly means that there are no dangers to watch out for. The evidence could still cause the jury to condemn a defendant based on passion or bias, for example, which is a no-no." *Id.* at 71.  In the criminal context, the First Circuit suggested that the potential for unfair prejudice could be ameliorated by jury instructions emphasizing the burden of proof on the government and that the defendant was "not on trial for any act, conduct or offense that was not charged in the indictment." *Id.*

In *Joubert*, addressing testimony from three other victims, the First Circuit clarified that to be admitted under Rule 414 (the criminal rule analogue to Rule 415), it was not necessary for those acts to have resulted in criminal convictions.  778 F.3d at 253-55.  The First Circuit wondered if the testimony of three witnesses was cumulative and acknowledged that the other acts evidence was "very prejudicial," but it upheld the admission of the testimony under Rule 414, noting that "[i]n balancing the scales of Rule 403, it is important to note that only unfair prejudice is to be avoided, as by design, all evidence is meant to be prejudicial." *Id.* (quoting *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008)).

Furthermore, regarding the probative value of the other acts evidence, the *Joubert* Court wrote:

> Second, because Joubert's defense was that he did not commit the crimes against KC, evidence bearing on KC's veracity was probative to

> determining whether Joubert indeed produced and possessed the illicit
> recording. The uncharged child molestation testimony was probative of
> KC's veracity because it corroborated aspects of KC's testimony,
> particularly the nature of the abuse and Joubert's modus operandi in
> approaching his victims. Given these corroborating aspects of the
> witnesses' testimony, the district court did not abuse its discretion under
> Rule 403 in finding that the uncharged molestation
> testimony's probative value outweighed any unfair prejudicial effect.

778 F.3d at 254-55.    Finally, the First Circuit affirmed the admission of the other
acts evidence even though the other acts took place about ten years before the events
underpinning the charged criminal conduct.  *Id.* at 254.

In *Majeroni*, addressing a conviction for the possession of child pornography,
the First Circuit upheld the admission under Rule 414 of a prior criminal conviction
for possession of child pornography.  784 F.3d at 74.  The *Majeroni* Court observed
that because the evidence was of a prior conviction, there was no danger of a "trial
within the trial."  *Id.* at 76.  The First Circuit commented that "[t]he fact that the
prior conduct was similar to the charged conduct enhanced its presumed
probativeness."  *Id.*  Finally, the *Majeroni* Court was not troubled by the fact that the
prior conviction in that case was ten years old.  *Id.*

The latest Rule 414 ruling from the First Circuit is *Gaudet*, 933 F.3d 11.  In
*Gaudet*, dealing with federal sex offenses, the First Circuit upheld admission under
Rule 414 of similar conduct and rejected a Rule 403 objection.  *Id.* at 15-16.  First, the
First Circuit pointed out that the other victim's testimony was probative because it
helped to establish the credibility of the alleged victim's testimony.  *Id.* at 18.
"Indeed, much of [the defendant's] strategy at trial involved discrediting [the victim's]
credibility by highlighting inconsistencies in her testimony."  *Id.*  Thus, the First

13

Circuit noted, "[t]he evidence of [the other victim's] testimony, therefore, was probative because the near identical account of abuse that she offered helped to corroborate [the victim's] allegations by illustrating that his other daughter had leveled nearly identical allegations against [him] previously." *Id.* (citing *Joubert*, 778 F.3d at 254 ("The uncharged child molestation testimony was probative of [the victim's] veracity because it corroborated aspects of [the victim's] testimony, particularly the nature of the abuse and [the defendant's] modus operandi in approaching his victims"). Next, the First Circuit observed that it had previously held that one type of evidence probative of a defendant's intent is evidence that the defendant committed an earlier crime that "bore a strong resemblance to the charged conduct." *Id.* (quoting *United States v. Raymond*, 697 F.3d 32, 38-39 (1st Cir. 2012)).

Based on this Court's review of Rule 415 and First Circuit caselaw, the Court concludes that the testimony of both Ms. Schick and Ms. Hennedy is admissible under Rule 415. First, the traditional argument that other acts evidence should not be admissible to prove propensity is unavailable to evidence admitted under Rule 415. Second, the similarity among the allegations of Ms. Russell and Ms. Schick and Ms. Hennedy is striking. Each female was about the same age when the alleged abuse began. Their families were all friendly with Mr. Chenevert. All three females describe similar approaches by Mr. Chenevert: demands for kissing and Mr. Chenevert using his tongue during the kiss. They were all residents of the Biddeford, Maine area.

The locations of the abuse are similar. Ms. Hennedy alleged that the first incident of abuse took place in her home. *Hennedy Dep.* at 12:18-13:13. She testified that the second incident took place in Mr. Chenevert's home. *Id.* at 18-21-19:6. Ms. Russell and Ms. Schick allege that the abuse occurred in his home, boat, and business. *Schick Dep.* at 13:15-19; *Russell Dep.* at 79:5-7 (boat), 96:11-19 (Russell home); Attach. 8, *Pl.'s Answers to Def.'s Interrogs.* at 6-8 (Russell home, Chenevert home, Chenevert business, Chenevert boat).

Finally, even though all three women delayed their allegations against Mr. Chenevert for decades, there is no suggestion that these women knew each other or had discussed their allegations with each other before the Nemitz opinion piece.

The probative value of this testimony is especially powerful because Mr. Chenevert has denied that the abuse ever took place, and he is challenging Ms. Russell's credibility based in part on the long passage of time from the alleged abuse to her revelation of it. Absent Ms. Schick and Ms. Hennedy, the trial would come down to her word against his. The testimony of Ms. Schick and Ms. Hennedy is bound to affect a jury's evaluation of this credibility standoff. Thus, as in *Joubert*, "the uncharged child molestation testimony [is] probative of [Ms. Russell's] veracity because it corroborate[s] aspects of [her] testimony, particularly the nature of the abuse and [Mr. Chenevert's] modus operandi in approaching his victims." *Joubert*, 778 F.3d at 254.

Because it is powerful corroborative evidence, the testimony of Ms. Schick and Ms. Hennedy is prejudicial to Mr. Chenevert's defense, even in the words of *Joubert*

"very prejudicial."  Mr. Chenevert's pretrial memorandum lists Charles Robinson, Ph.D. as an expert witness.  *Def.'s Local Rule 16.4 Pretrial Mem.* at 2 (ECF No. 38) (*Def.'s Pretrial Mem.*).  In her pretrial memorandum, Ms. Russell states that Dr. Robinson is expected to testify about false or fabricated memory.  *Pl.'s Pretrial Mem.* at 2 (ECF No. 37).  Where Ms. Russell first disclosed the alleged abuse about eighteen years after it occurred and first went public about twenty-five years after it occurred, the Court assumes that the testimony of two other women who say that they too were sexually abused when they were young will have an impact on the viability of the false or fabricated memory defense.  But as the First Circuit wrote in *Joubert*, not all prejudicial evidence is inadmissible, and the law's focus is not on prejudicial evidence but on unfairly prejudicial evidence.  778 F.3d at 253-55.

Furthermore, the testimony calls on Mr. Chenevert to defend actions that allegedly took place over two decades ago.  Presumably, as Mr. Chenevert points out, he will have a difficult time reconstructing that time of his life to rebut these allegations, for example, to prove that on a particular day of alleged abuse, he was somewhere else.  But the First Circuit has affirmed the admission of old allegations of sexual abuse.  *Joubert*, 778 F.3d 254-55 & n.3 (ten years); *Jones*, 748 F.3d at 65-68 (eighteen years).

Here, the other acts allegations were not, as in some other cases, confirmed by a prior conviction and Mr. Chenevert has denied all these allegations.  In defense of the allegations by Ms. Schick, Mr. Chenevert has noted that Ms. Schick has admitted to having an incomplete memory of these incidents, had previously denied any sexual

abuse by Mr. Chenevert, and has struggled with alcohol and drug abuse. *Def.'s Opp'n* at 3-4. As for Ms. Hennedy, Mr. Chenevert has indicated that he intends to defend his actions as just tickling, not sexual conduct. *Id.* at 1-3.

Despite the potential for a trial within a trial, the Court concludes that the testimony of Ms. Schick and Ms. Hennedy is admissible. To comply with Rule 415(a), the Court knows of no other way to admit this highly probative testimony and at the same time accord Mr. Chenevert his right to defend the lawsuit. The traditional argument against the admission of such evidence under Rule of Evidence 404(b) – namely that the evidence would lead the jury to conclude that he is a child molester and has a propensity to commit acts of sexual misconduct with young children – is not available under Rule 415. *Jones*, 748 F.3d at 70-71 (Rule 414 "flags this propensity inference as proper"). Furthermore, as suggested in *Jones*, the impact of this testimony may be mitigated by emphasizing that Ms. Russell has the burden of proof, that her claim against Mr. Chenevert is the only civil action before the jury, and that the jury must not base its verdict on passion or bias. 748 F.3d at 71.

In sum, based on Rule 415(a) and applying First Circuit caselaw, the Court concludes that the other acts testimony of Rebecca Schick and Alex Hennedy will be admissible in the upcoming trial of Julia Russell's civil action against Phillip Chenevert.[2]

---

[2]     Because the Court resolves this case under Rule 415, it does not reach whether this evidence would be admissible under Rule 404(b).

## IV.   CONCLUSION

The Court GRANTS Julia Russell's Motion in Limine to Admit Evidence of Similar Acts of Child Molestation and Notice of Intent to Use Such Evidence (ECF No. 30) and deems the other acts testimony of Rebecca Schick and Alex Hennedy admissible.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of August, 2022

18