UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JULIA RUSSELL,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        No. 2:21-cv-191-JAW
                                        )
PHILIP AUGUSTUS                         )
      CHENEVERT, II                     )
                                        )
            Defendant.                  )

**ORDER ON MOTION TO PRECLUDE AND MOTION TO AMEND EXPERT
DESIGNATION**

With a jury trial looming, the parties have crossed swords about whether the
defendant may call a plaintiff's expert witness during the defense case, since the
plaintiff only recently dedesignated her expert as a trial witness and, according to the
defendant, the plaintiff's expert forms a predicate for the testimony of the defense
expert.  The Court grants the Plaintiff's motion to dedesignate her expert because the
Court will not compel the Plaintiff to call a trial witness she does not wish to call.
Because the Court is not convinced that the testimony of the Plaintiff's expert is
necessary for the defendant to present the testimony of his own expert, the Court
grants in part and denies in part the Plaintiff's motion to preclude the Defendant
from calling her dedesignated expert, granting the motion in general but leaving open
the possibility that the Defendant may be allowed to call the expert witness but only
if certain predicates are established.

## I.      BACKGROUND

### A.      Procedural Background

On July 9, 2021, Julia Russell filed a complaint in this Court against Philip[1] Augustus Chenevert, II, contending that between 1992 and 1994, when she was between six and eight years old, Mr. Chenevert sexually abused her. *Compl.* (ECF No. 1) (*Compl.*). Mr. Chenevert denies that he committed the alleged abuse. *Answer* (ECF No. 18) (*Answer*). Ms. Russell has sued Mr. Chenevert for assault and intentional infliction of emotional distress, seeking compensatory and punitive damages. *Id.* ¶¶ 19-26.

On December 8, 2021, the Court issued a scheduling order, which required that Ms. Russell designate her expert witnesses and provide Federal Rule of Civil Procedure 26(a)(2)(A) information by February 22, 2022 and that Mr. Chenevert designate his expert witnesses and provide Rule 26(a)(2)(A) information by March 29, 2022. *Scheduling Order* at 2 (ECF No. 19). On December 27, 2021, the Magistrate Judge revised these deadlines upon joint motion of the parties, *Jt. Obj. to Scheduling Order* (ECF No. 20), extending the Plaintiff's expert disclosure deadline to March 22, 2022 and the Defendant's to April 19, 2022. *Order* (ECF No. 21). On March 22, 2022, Ms. Russell designated Carlos Cuevas, Ph.D. as a retained expert. *Mot. to Am. Pl.'s Expert Designation* at 1 (ECF No. 60) (*Pl.'s Mot. to Am.*).

---

[1]      While the Complaint and case heading have spelled Mr. Chenevert's first name as "Phillip," he has identified that the correct spelling is "Philip." *See Mot. to Stay* at 1 n.1 (ECF No. 8). Ms. Russell has since also adopted that spelling, and the Court now sua sponte ORDERS that the caption of the case be modified to correct the spelling of Mr. Chenevert's name.

On April 15, 2022, Mr. Chenevert filed a motion, requesting that the expert deadlines be extended until May 19, 2022, *Def.'s Unopposed Mot. to Enlarge Deadline for Expert Witness Designation* (ECF No. 22), and on April 20, 2022, the Magistrate Judge granted the motion. *Order* (ECF No. 23). On May 16, 2022, Mr. Chenevert filed another motion to extend the expert witness deadline, asking that his expert witness designation be extended twelve days to May 31, 2022. *Def.'s Unopposed Mot. to Enlarge Deadline for Expert Witness Report* (ECF No. 28). On May 16, 2022, the Magistrate Judge granted that motion. *Order* (ECF No. 29).

On July 18, 2022, the Clerk's Office set the case for trial during the September term of court. *Trial List* (ECF No. 34). On July 26, 2022, both the Plaintiff and the Defendant filed final pretrial memoranda. *Pl.'s Final Pre-trial Mem.* (ECF No. 37) (*Pl.'s Final Pretrial*); *Def.'s Local Rule 16.4 Pretrial Mem.* (ECF No. 38) (*Def.'s Final Pretrial*). In her final pretrial memorandum, Ms. Russell listed Carlos Cuevas, Ph.D., as a witness she intended to call at trial. *Pl.'s Final Pretrial* at 3. In his final pretrial memorandum, Mr. Chenevert listed both Dr. Cuevas and Charles Robinson, Ph.D., as trial witnesses. *Def.'s Final Pretrial* at 2. At the Final Pretrial Conference on August 2, 2022, based on the parties' limited availability for trial in September, the Court set the matter for trial during the month of October. *Report of Final Pretrial Conf. and Order* at 2 (ECF No. 40). Subsequently, the Court set October 3, 2022 as the date for jury selection and October 17-21, 2022 as the trial dates. *Notice of Hr'g* (ECF No. 45-46).

At the August 2, 2022, Final Pretrial Conference, the parties indicated that they did not anticipate any unusual issues with witness availability, and the Court ordered the parties to file complete witness lists by September 23, 2022. *Report of Final Pretrial Conf. and Order* at 3-4. On September 23, 2022, Mr. Chenevert filed a witness list, including both Dr. Cuevas and Dr. Robinson, *Def.'s Witness List* at 1-3 (ECF No. 53), and Ms. Russell filed a witness list, including Megan Marsh, Psy. D., her treating psychologist, but not Dr. Cuevas. *Pl.'s Witness List* at 1-2 (ECF No. 57).

On September 23, 2022, Ms. Russell filed a motion, asking the Court to amend her expert designation to list Dr. Cuevas as a non-testifying expert. *Pl.'s Mot. to Am.* at 1. On September 26, 2022, Ms. Russell filed a second motion, asking the Court to prevent Mr. Chenevert from calling Dr. Cuevas as a witness. *Pl.'s Mot. to Am.* at 1; *Mot. to Preclude Def. Philip Chenevert from Calling Pl.'s Retained Expert at Trial* (ECF No. 65) (*Pl.'s Mot. to Preclude*). On September 29, 2022, Mr. Chenevert filed his opposition both to Ms. Russell's motion to preclude and her motion to amend her expert designation. *Opp'n to Pl.'s Mot. to Preclude Def. Philip A. Chenevert from Calling Pl.'s Retained Expert at Trial* (ECF No. 67) (*Def.'s Opp'n*); *Opp'n to Mot. to Am. Expert Witness Designation* (ECF No. 69). On September 30, 2022, Ms. Russell filed a reply. *Reply to Def.'s Opp'n to Mot. to Preclude Def. Philip A. Chenevert from Calling Pl.'s Retained Expert at Trial* (ECF No. 68) (*Pl.'s Reply*).

**B.    Factual Background**

4

Ms. Russell has sued Mr. Chenevert for assault and intentional infliction of emotional distress, alleging that he sexually abused her as a child. *Compl.* ¶¶ 19-26. Ms. Russell seeks compensatory and punitive damages. *Id.* ¶ 26.

In preparation for trial, Ms. Russell retained Carlos Cuevas, Ph.D., a forensic psychologist. *Pl.'s Mot. to Preclude* at 2. On December 27, 2021, and January 3, 2022, Dr. Cuevas performed a psychological evaluation of Ms. Russell. *Id.* On March 14, 2022, he issued a report outlining his findings. *Id., Attach. 1* (*Cuevas Report*). On March 22, 2022, Ms. Russell designated Dr. Cuevas as an expert witness. *Pl.'s Mot. to Preclude* at 2.

On April 20, 2022, Mr. Chenevert's counsel emailed Ms. Russell's counsel, requesting that Dr. Cuevas provide the defendant's expert, Charles Robinson, Ph.D., with "the reviewed literature relied upon by Dr. Cuevas in developing his report that support his opinions or conclusions." *Id.* Dr. Cuevas complied two days later, and on May 20, 2022, Mr. Chenevert designated Dr. Robinson as his expert witness. *Id.*

On June 1, 2022, Mr. Chenevert served Dr. Robinson's expert report, which includes a summary of and commentary on Dr. Cuevas' report. *Id., Attach. 5* at 12-15. Dr. Robinson did not examine Ms. Russell himself. *Id.* On June 20, 2022, Ms. Russell's counsel deposed Dr. Robinson, and several weeks later Mr. Chenevert's counsel deposed Dr. Cuevas. *Pl.'s Mot. to Preclude* at 2.

On July 26, 2022, the parties filed their Final Pretrial Memoranda, with both parties including Dr. Cuevas on the list of witnesses they planned to call at trial. *Pl.'s Final Pretrial* at 3; *Def.'s Final Pretrial* at 2. On August 2, 2022, the parties

5

participated in a final pretrial conference, after which the Court issued an Order stating that "[a]ny new motions in limine must be filed by August 9, 2022." *Report of Final Pretrial Conf. and Order* at 2.

On September 21, 2022, Mr. Chenevert's counsel indicated that he would subpoena Dr. Cuevas. *Pl.'s Mot. to Preclude* at 2. The next day, the parties' attorneys spoke by phone, and Mr. Chenevert's counsel stated that he intended to subpoena Dr. Cuevas regardless of whether Ms. Russell dedesignated him as her expert. *Id.* On September 23, 2022, Mr. Chenevert's counsel asked Dr. Cuevas by email to accept service of a subpoena. *Id.* at 3. Also on that day, Ms. Russell filed her witness list, which did not include Dr. Cuevas, and a motion to amend her expert designation to dedesignate him. *Id.*; *Pl.'s Mot. to Amend.*

## II.   THE PARTIES' POSITIONS

### A.   The Plaintiff's Motion to Preclude the Defendant from Calling Dr. Cuevas

In her motion, Ms. Russell asks the Court to preclude Mr. Chenevert from calling Dr. Cuevas at trial or, in the alternative—should the Court allow Mr. Chenevert to compel Dr. Cuevas to testify—requests that she be permitted to amend her witness list to include him. *Pl.'s Mot. to Preclude* at 6, n.2.

Ms. Russell argues that, because she will not be calling Dr. Cuevas, Mr. Chenevert may do so only if "exceptional circumstances" exist to do so. *Id.* at 1. None exists, in her view, and instead Mr. Chenevert is merely attempting to "swap his expert for Plaintiff's" because of his "dissatisfaction with his own expert, who gave

testimony at his deposition that both undermined Defendant's claim and that is likely to outrage the jury." *Id.*

Noting that "[a] trial court has discretion to decide whether to require a witness to testify for an opposing party," *id.* at 3 (quoting *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 39 (1st Cir. 2008)), Ms. Russell grounds her argument primarily in this Court's recent decision in *Rebarber-Ocasio v. Feliciano-Munoz*, No. 3:18-cv-01218-JAW, 2022 U.S. Dist. LEXIS 100909 (D.P.R. June 6, 2022). She quotes this Court in *Rebarber-Ocasio* "adopt[ing] the majority approach and hold[ing] that, where a party identifies an expert witness but subsequently redesignates the expert as non-testifying, the opposing party may only compel discovery related to that expert upon a showing of 'exceptional circumstances.'" *Pl.'s Mot. to Preclude* at 4 (quoting 2022 U.S. Dist. LEXIS 100909, at *2).

Here, Ms. Russell contends, "no such 'exceptional circumstances' exist that would warrant compelling Dr. Cuevas to testify on Defendant's behalf." *Pl.'s Mot. to Preclude* at 4. Moreover, she contends that "the argument for compelling Dr. Cuevas's testimony here is far weaker than the argument for compelling the non-testifying expert's report in *Rebarber-Ocasio*," as Mr. Chenevert "has access not only to Dr. Cuevas's report, but also his raw test materials" and has designated [his] own forensic psychologist, Dr. Robinson, who has already relied heavily on these very materials in forming his opinions." *Id.* at 4-5. She also suggests that, "[i]n all likelihood, however, Defendant does not intend to call both experts: instead, he is seeking to call Dr. Cuevas in lieu of . . . Dr. Robinson, as calling Dr. Robinson creates

several significant headaches" for Mr. Chenevert because Dr. Robinson "made certain concessions that are highly problematic." *Id.* at 5. These purported "concessions" include admitting "that Julia's allegations are not consistent with so-called 'false memories,'" conceding that one of his theories is "poorly amenable to scientific scrutiny," and "relying on a notorious and highly controversial article that calls for the destigmatization of 'adult child sex.'" *Id.* Finally, another reason she believes Mr. Chenevert will attempt to call Dr. Cuevas is that Dr. Cuevas has personally examined Ms. Russell, but Dr. Robinson has not. *Id.*

In sum, Ms. Russell argues that "[t]hese facts may weaken Dr. Robinson as an expert, but . . . should not constitute an 'exceptional circumstance' justifying Defendant's attempt to call Dr. Cuevas." *Id.* at 6. Mr. Chenevert "chose to designate Dr. Robinson, and chose not to request an examination of Julia; he should not now be permitted to use his 'opponent's effort and expense incurred in preparing its case' as a justification for compelling Plaintiff's expert to testify." *Id.* (quoting *Rebarber-Ocasio,* 2022 U.S. Dist. LEXIS 100909, at *14).

### B.    The Defendant's Opposition

In response, Mr. Chenevert argues that Ms. Russell's motion should be denied for both procedural and substantive reasons. *Def.'s Opp'n* at 3-7. Mr. Chenevert first contends that it "should be denied as an untimely motion in limine" because the Court set an August 9, 2022 deadline for such motions and Ms. Russell "first announced her desire to file the instant motion on September 23, 2022, 45 days after the deadline for filing motions in limine had expired." *Id.* at 3. Acknowledging that the Court has

8

discretion to consider untimely motions, Mr. Chenevert contends that it should decline to exercise that discretion here because "Russell's counsel has known since July that Chenevert intends to call Dr. Cuevas as a witness" and thus had "more than adequate time" to file this motion before the deadline. *Id.* at 3-4. At a bare minimum, Mr. Chenevert adds, Ms. Russell "could have at least indicated during the final pretrial conference her position that, if she decides to not call Dr. Cuevas, Chenevert should not be allowed to call him either." *Id.* at 4.

Turning to his substantive objections, Mr. Chenevert first cites *Jasty*, 528 F.3d at 39, for the proposition that "the Court has discretion to allow Chenevert to call Dr. Cuevas as a witness even over [Ms. Russell's] objection." *Def.'s Opp'n* at 4. Mr. Chenevert then focuses on the timing of Ms. Russell's motion and the purported impact it would have on his defense. He argues that Ms. Russell's motion comes "near the eve of trial, long after discovery has closed and long after becoming aware of Defendant's intent to call Dr. Cuevas" and "[h]ad the issue been raised earlier, Chenevert at a minimum could have sought to introduce Dr. Cuevas's deposition testimony in accordance with the report and order." *Id.*

Now, preventing Mr. Chenevert from calling Dr. Cuevas will "interfere with [his] defense." *Id.* at 5. Mr. Chenevert's expert, Dr. Robinson, did not examine Ms. Russell and relied on Dr. Cuevas' report in forming his opinions, and thus excluding Dr. Cuevas "may limit Chenevert's ability to admit Dr. Cuevas's statements and opinions upon which Dr. Robinson relied." *Id.* Additionally, if Ms. Russell testifies contrary to Dr. Cuevas' opinions, Mr. Chenevert argues that he must be able to call

9

Dr. Cuevas or else Ms. Russell "will be able argue without fear of contradiction that Dr. Robinson's opinions should be disregarded because the underlying evaluator, Dr. Cuevas, simply reached the wrong conclusions." *Id.*

Mr. Chenevert distinguishes *Rebarber-Ocasio,* as a case where the expert "never produced a report" and was "never deposed," from this case, where Dr. Cuevas did both. *Id.* at 5 (quoting 2022 U.S. Dist. LEXIS 100909, at *15). In these circumstances, he contends, the apposite authority is instead *Hartford Fire Insurance Co. v. Transgroup Express, Inc.*, 264 F.R.D. 382, 384 (N.D. Ill. 2009), which held that a party could not re-designate an expert as non-testifying after having identified him previously as a testifying expert. *Def.'s Opp'n to Mot. to Preclude* at 5-6. Mr. Chenevert also argues that Rule 26(b)(4)(D)'s "exceptional circumstances" standard should not apply because that rule limits discovery of an expert "who is not expected to be called at trial" and Dr. Cuevas was expected to be called at trial "throughout the entirety of the case." *Id.* at 6. Because the "interests Rule 26(b)(4)(D) is designed to promote are not furthered by precluding Dr. Cuevas's testimony now," Mr. Chenevert argues that the Court should deny Ms. Russell's motion. *Id.* at 7.

## C.    The Plaintiff's Reply

In her reply, Ms. Russell counters that Mr. Chenevert fails to distinguish *Rebarber-Ocasio*, which required "exceptional circumstances" to compel a redesignated expert. *Pl.'s Reply* at 1-2 (citing 2022 U.S. Dist. LEXIS 100909, at *12). Mr. Chenevert, she claims, also cannot meet this exceptional circumstances threshold. *Id.* at 2. Ms. Russell also argues that precluding Mr. Chenevert from

calling Dr. Cuevas as a witness will not prejudice his defense because "Rule 702 of the Federal Rules of Evidence allows Dr. Robinson to opine on Dr. Cuevas's opinions irrespective of whether the opinions themselves are admissible." *Id.* at 3. Thus, Dr. Cuevas' assertion that Ms. Russell does not suffer from post-traumatic stress disorder is undisputed, and Mr. Chenevert may instead impeach Ms. Russell with her prior deposition testimony. *Id.* at 3-4. Additionally, Ms. Russell alleges that Mr. Chenevert's stated justifications are pretextual and "his real motive is to avoid calling his own designated expert." *Id.* at 4. Finally, she contends that the motion should not be denied as untimely because Mr. Chenevert never amended his expert designation to include Dr. Cuevas, he has suffered no prejudice from the late filing, and because the Court could alternatively construe her motion as a timely motion to quash the subpoena of Dr. Cuevas. *Id.* at 4-5.

### D.    The Motion to Dedesignate and the Objection

Ms. Russell's motion to dedesignate Dr. Cuevas and Mr. Chenevert's response incorporate arguments set forth in detail in the briefing on the motion to preclude.

## III.   THE EXPERT REPORTS

### A.    Dr. Carlos A. Cuevas' Report

Dr. Carlos A. Cuevas, a licensed psychologist, examined Ms. Russell at her attorney's request on December 27, 2021 and January 3, 2022 and issued a nine-page report on March 14, 2022. *Pl.'s Mot. to Preclude* Attach. 1, *Psychological Eval. of Julia Russell* at 1-9 (*Cuevas Report*). Dr. Cuevas saw Ms. Russell first by

11

teleconference and later in person and spent a total of 4.5 hours examining her and administering psychological tests. *Id.* at 2.

Dr. Cuevas' report contains an extensive psychosocial history of Ms. Russell, including her childhood, her parents' divorce when she was fourteen, her relationship with her mother, father, and sister, her education, her employment, her dating history, her coming out at age twenty-two, her significant relationships, her opening a restaurant just before the pandemic, her history of mental health concerns, her frequent reminders of Mr. Chenevert's abuse, her sense of emotional disconnectedness, her substance abuse history, her past and current therapy, her sexual history, and her recollection of the details of Mr. Chenevert's alleged abuse. *Id.* at 1-7. Dr. Cuevas also reviewed the results of the battery of psychological tests he performed on Ms. Russell. *Id.* at 7-8.

Dr. Cuevas expressed the view that Ms. Russell is "high functioning and either is not experiencing significant psychological distress or is adequately able to manage it." *Id.* at 8. Even so, Dr. Cuevas wrote that there were "two notable exceptions" in her presentation: "PTSD symptoms and relationship difficulties likely connected to her abuse." *Id.* Dr. Cuevas acknowledged that her PTSD symptoms were "not sufficient to meet full diagnostic criteria for PTSD," but he thought she had "a number of symptoms that are disruptive to her everyday functioning," including "intrusive symptoms, psychological disconnection, and strong negative emotions." *Id.* Dr. Cuevas also wrote that Ms. Russell has had "a number of relationship struggles

associated with healthy boundaries and trust," which he thought were "connected to her abuse." *Id.*

Dr. Cuevas addressed the issue of false sexual abuse allegations. *Id.* at 8-9. He stated that "fewer than 5-7% of disclosures are found to be false." *Id.* at 9. Dr. Cuevas thought that the history of Ms. Russell's case, including her late disclosure, is "consistent with common occurrences in the experience and reporting of abuse." *Id.* He noted her "clear recollection of certain abuse events," but her uncertainty about others. *Id.* Finally, he viewed her description of Mr. Chenevert's behavior as "[g]rooming behavior," which is "common among perpetrators." *Id.*

Finally, Dr. Cuevas recommended continued therapy and, if her symptoms worsened, possible medication. *Id.*

### B.    Dr. Charles Robinson's Report

On May 26, 2022, Dr. Charles L. Robinson, a clinical and forensic psychologist, issued a nineteen-page expert report to Mr. Chenevert's attorney. *Pl.'s Mot. to Preclude* Attach. 5, *Letter from Charles L. Robinson, Ph.D. to Gene Libby, Esq.* at 1-19 (*Robinson Report*). Dr. Robinson performed a records analysis of the psychological aspects of Ms. Russell's case, reviewing "a variety of material." *Id.* at 1. The material included: (1) a July 25, 2021 article authored by Bill Nemitz, a columnist for the Portland Press Herald, describing Ms. Russell's allegations against Mr. Chenevert; (2) Plaintiff's Answers to Defendant's Interrogatories, detailing Mr. Chenevert's abuse; (3) the allegations in Plaintiff's Complaint; (4) Ms. Russell's April 19, 2022 deposition; (5) psychotherapy notes from Jonathan Hopps, LCSW, M.Ed. from

October 13, 2020 to May 19, 2021; (6) psychotherapy notes from Megan Marsh, Psy.D., from June 9, 2021 to January 6, 2022; and (7) the March 14, 2022 psychological evaluation by Dr. Cuevas. *Id.* at 1-15.

In his analysis and conclusion section, Dr. Robinson discussed: (1) whether Ms. Russell made a false report of abuse; (2) whether Ms. Russell's clinical symptoms and need for therapy are related to childhood sexual abuse. In his analysis, Dr. Robinson makes some key observations. First, other than the fact of litigation, Dr. Robinson discovered "no other gross markers which would indicate that Ms. Russell is falsely accusing Mr. Chenevert." *Id.* at 15. Dr. Robinson discussed "repressed memory" and discarded it as unlikely in Ms. Russell's case. *Id.* A more complicated question is whether having suffered from distress from other sources, Ms. Russell sought "an explanation for that distress" and came to believe that child sexual abuse was responsible for her difficulties. *Id.* Here, Dr. Robinson admitted that this concept "is poorly amenable to scientific scrutiny." *Id.*

Dr. Robinson analyzed "Ms. Russell's functioning in such areas as enjoyment of life, productivity, relationships, and other noteworthy aspects of life." *Id.* Significantly, Dr. Robinson observes that "Ms. Russell appears to have had some significant degree of distress as reflected in her life narrative." *Id.* at 16. At the same time, Dr. Robinson notes that Ms. Russell is now in the "best relationship she has ever had." *Id.* Dr. Robinson also states that Ms. Russell has "independent wealth," which has allowed her to "establish a comfortable, even somewhat luxurious, lifestyle" and she has not had to pursue "conventional avenues of financial/career

14

success." *Id.*  But he concedes that she is pursuing this goal through her restaurant. *Id.*

Dr. Robinson turns to the impact of child sexual abuse.  *Id.*  He states that if the victim experienced significant physical pain and violence, credible threats of harm, or were victims of stranger abuse, the situation is different.  But Dr. Robinson questions whether "all manner of [child sexual abuse], no matter how intrusive, aggressive or unwanted, universally leads to significant psychological harm and distress."  *Id.* at 17.  Dr. Robinson cited one study that found "limited lasting psychological harm directly attributable [to child sexual abuse] when other factors such as disturbed parents, alcoholism, etc., were present."  *Id.*

Dr. Robinson listed common symptoms experienced by survivors of child sexual abuse: "substance abuse, self-injurious behavior (SIB), revictimization, strong suspicion of compromised general medical health, extreme PTSD symptoms, suicidal ideation and action, promiscuity, the development of Borderline Personality Disorder and other adverse psychiatric conditions."  *Id.*  He wrote that "[f]ortunately, Ms. Russell shows none of these negative outcomes."  *Id.*

Dr. Robinson observed that the "focus of much of Ms. Russell's therapy to date and her clinical symptoms/complaints focus on difficulties in intrapersonal relationships."  *Id.* at 17-18.  Dr. Robinson wrote that it "seems reasonable to conclude that an explanation of her current predicaments are as well explained by factors apart from the assumed sexual abuse."  *Id.* at 18.  But Dr. Robinson conceded that it

would be "problematic" to "render a conclusion as to the causative weights of her early childhood experiences and the sexual abuse." *Id.*

In conclusion, Dr. Robinson acknowledged that the "ultimate determination as to whether or not Ms. Russell has been abuse[d] by the defendant is a question for the finder of fact." *Id.* But he wrote that "[f]actors associated with false accusations are not grossly evident." *Id.* He observed that Ms. Russell's "degree of psychological stress" is not "markedly elevated compared to that of persons similarly situated who have not been subjected to [child sexual abuse]" and that "major negative outcomes often associated with [child sexual abuse] are not apparent in Ms. Russell's history." *Id.* at 18-19. He observed that the "focus of the plaintiff's psychotherapy has been designed to address relationship problems" and these problems "are common in all manner of persons including those absent a history of [child sexual abuse] and who report having had adequate parenting as children." *Id.* at 19.

## IV.   LEGAL STANDARD

The Court will not describe the legal standards applicable to resolve the question the parties have presented: whether a party may call as a witness in its case, an expert first designated by an opposing party and, just before trial, dedesignated by the opposing party. *See Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28 (1st Cir. 2008); c*ompare Ager v. Jane C. Stormont Hospital and Training School for Nurses*, 622 F.2d 496 (10th Cir. 1980) and *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010); *with Hartford Fire Ins. Co., Inc. v. Transgroup Express, Inc.*, 264 F.R.D. 382, 384-85 (N.D. Ill. 2009). Moreover, as the author of *Rebarber-Ocasio v.*

16

*Feliciano-Munoz*, No. 3:16-cv-2719-JAW, 2022 U.S. Dist. LEXIS 100909 (D.P.R. June 6, 2022), the Court is generally familiar with the issue posed in *Rebarber* and the differences and similarities between *Rebarber* and this case.

The reason that an exposition of the standard is unnecessary is that, in the Court's view, regardless of the exact standard by which a court must measure such a motion, the party wishing to call another's expert must present a reason for doing so. Here, for the reasons the Court describes, the Court disagrees with the premise of Mr. Chenevert's argument and Ms. Russell's response because when the Court scrutinizes the expert reports, the Court concludes that, contrary to Mr. Chenevert's contention, Dr. Robinson's expert opinion does not depend on Dr. Cuevas' opinions and, to the extent Dr. Robinson wishes to rely on Dr. Cuevas' testing, Ms. Russell has conceded that Dr. Robinson is allowed to do so. Thus, based on the record before it, the Court does not find that the parties have generated a viable disagreement. Accordingly, the Court does not reach the more difficult issue the parties presented, namely whether an opponent may call as an expert during the opponent's case a fully designated, deposed and listed expert, whom the proponent dedesignates at the last moment, and instead resolves the motion on the simpler question of whether Mr. Chenevert may call Ms. Russell's dedesignated expert in the circumstances in this case.

## V.   THE EXPERT REPORTS AND THE PARTIES' POSITIONS

Parsing through the experts' reports and the positions of the parties, the Court is curious about why there is such an animated controversy between the parties. The

Court's impression is that the opinions of the two experts diverge only at the edges. Dr. Cuevas is more certain than Dr. Robinson about the veracity of Ms. Russell's allegations of child sexual abuse against Mr. Chenevert. *Cuevas Report* at 8 ("The chronicity of this abuse, coupled with the close relationship to the perpetrator, and severity of the acts, has the potential to result in significant psychological harm given what is known about the impact of childhood sexual abuse"). But Dr. Robinson conceded that "[t]here are no gross markers which would indicate that Ms. Russell is falsely accusing Mr. Chenevert" and Dr. Robinson remarked that Ms. Russell's accusations did not fit the pattern of "repressed memory." *Robinson Report* at 15. Dr. Robinson raised the question of whether Ms. Russell is blaming the child sexual abuse for her current issues as opposed to the other stressors in her life. But there is no suggestion that Dr. Robinson needs Dr. Cuevas' report to make this observation.

Both Dr. Cuevas and Dr. Robinson appear to agree that Ms. Russell is doing reasonably well. Dr. Cuevas describes Ms. Russell as "high functioning and either is not experiencing significant psychological distress or is adequately able to manage it." *Cuevas Report* at 8. Dr. Robinson says that Ms. Russell is experiencing "none of [the] negative outcomes" commonly associated with child sexual abuse. *Russell Report* at 17. Again, it seems that the two psychologists do not fundamentally disagree, but more to Mr. Chenevert's point, there is no suggestion that Dr. Robinson's opinion is predicated upon the contents of Dr. Cuevas' report.

Moreover, to the extent Dr. Robinson would like to rely on Dr. Cuevas' report to demonstrate the underpinnings of his expert opinions, Ms. Russell conceded that

"Rule 702 of the Federal Rules of Evidence allows Dr. Robinson to opine on Dr. Cuevas' opinions irrespective of whether the opinions themselves are admissible." *Pl.'s Reply* at 3. Specifically, Federal Rule of Evidence 703 allows an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed." FED. R. EVID. 703. So long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion," the facts and data need not be admissible themselves. *Id.* But if the facts or data would be otherwise inadmissible, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

In light of the way the rules of evidence apply to Dr. Robinson's testimony, the Court is not clear why there is such a disagreement between the parties. Here, for example, Dr. Cuevas performed a battery of psychological tests on Ms. Russell, the results of those tests were apparently forwarded to Dr. Robinson, and Dr. Robinson considered them in arriving at his opinions. Based on Ms. Russell's concession, if Dr. Robinson wished to refer to Dr. Cuevas' testing during his testimony to substantiate Dr. Robinson's expert opinions, the Court assumes there would be no objection and suspects if there were, it would be overruled. On this point, the Court does not see why Mr. Chenevert must call Dr. Cuevas as a witness to make a point that Rule 703 allows Dr. Robinson to make, regardless of whether Dr. Cuevas testifies. There may be some opinions expressed in Dr. Cuevas' report that Dr. Robinson would like to

refer to. But based on the record, the Court remains to be convinced that he needs to do so in order to express the opinions in his expert report.

Mr. Chenevert raises one evidentiary issue that might – but might not – prove problematic. Mr. Chenevert notes that if Ms. Russell "testifie[d] contrary to any of Dr. Cuevas' opinions, which were relied upon by Dr. Robinson, then the defense must be allowed to call Dr. Cuevas as the actual evaluator to challenge Russell." *Def.'s Opp'n* at 5. The Court would not describe the issue quite this way, since Ms. Russell is not likely to be allowed to express expert opinions about child sexual abuse or, if she wandered into expert testimony, it is not likely that the Court would allow it, assuming Mr. Chenevert raised a timely objection.

Even so, Mr. Chenevert worries that if Dr. Cuevas is prohibited from testifying, Ms. Russell could testify to facts about her background, which are contradicted by the history she gave Dr. Cuevas. *Def.'s Opp'n* at 5 ("[I]f Russell testifies contrary to any [of] Dr. Cuevas's opinions . . ., then the defense must be allowed to call Dr. Cuevas as the actual evaluator to challenge Russell. Otherwise, Russell will be able [to] argue without fear of contradiction . . .."). For example, if Ms. Russell contradicts in her trial testimony the descriptions of her abuse by Mr. Chenevert or if she were to deny her father's history of alcohol abuse and depression, these statements could be admissible as an admission under Federal Rule of Evidence 801(d)(2) or 803(4). As Ms. Russell made the statements to Dr. Cuevas, the Court might allow Mr. Chenevert to call Dr. Cuevas to offer impeachment evidence. *See* FED. R. EVID. 607.

But this problem will not arise if Ms. Russell testifies consistently with the history she gave Dr. Cuevas. Furthermore, as Ms. Russell was deposed, it may be unnecessary to call Dr. Cuevas as her deposition might provide more direct impeachment. *See Pl.'s Reply* at 3-4 ("Finally, during Plaintiff's deposition, she was extensively questioned on her interview with Dr. Cuevas. To the extent her testimony at trial is inconsistent with that prior testimony, she will be subject to impeachment. In fact, her prior deposition is admissible as a party admission"). Of course, if her trial testimony is contradicted by both her prior testimony and what she told Dr. Cuevas, the defense's impeachment would be more powerful, and it is possible that Dr. Cuevas' testimony would be admissible if Ms. Russell opens the door. At this juncture, however, the Court has no reason to rule on events that might not happen.

In short, based on the Court's understanding of the record, the parties have presented the Court with arguments in search of a controversy. Based on what is before the Court, the Court will tentatively grant the Plaintiff's Motion to Amend Expert Designation (ECF No. 60) and grant in part and deny in part her Motion to Preclude Defendant Philip Chenevert from Calling Plaintiff's Retained Expert at Trial (ECF No. 65). If the Court has misunderstood the positions of the parties, either is free to file a further motion.

Finally, to complete the circle, the Court has not addressed the legal arguments about the late dedesignation of an expert witness. As the author of *Rebarber-Ocasio v. Feliciano-Munoz*, No. 3:16-cv-2719-JAW, 2022 U.S. Dist. LEXIS 100909 (D.P.R. June 6, 2022), the Court is generally familiar with the issue posed in

that case and the differences and similarities between *Rebarber* and this case.  If necessary, the Court will explore that issue further, but at this juncture, it seems unnecessary.

## VI.   THE MOTION TO AMEND

The Court grants the Plaintiff's motion to amend her designation of Dr. Cuevas as an expert witness who will testify for the Plaintiff.  There is no suggestion that the Court could or should compel Ms. Russell to call a trial witness whom she does not wish to call as a witness.  The only issue here is whether Mr. Chenevert has the right to call Dr. Cuevas as a defense witness.  Accordingly, Ms. Russell's motion to amend, essentially a motion to dedesignate, seems appropriate, regardless of Mr. Chenevert's objection.

## VII.   CONCLUSION

The Court GRANTS the Plaintiff's Motion to Amend Expert Designation (ECF No. 60) and GRANTS in part and DENIES in part her Motion to Preclude Defendant Philip Chenevert from Calling Plaintiff's Retained Expert at Trial (ECF No. 65).


SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 7th day of October, 2022

22