UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JULIA RUSSELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:21-cv-191-JAW |
| | ) |
| PHILIP AUGUSTUS CHENEVERT, II | ) |
| | ) |
| Defendant. | ) |

**AMENDED[1] ORDER REGARDING PRETRIAL PUBLICITY**

With trial postponed, the Court issues this order regarding pretrial publicity.

**I.   BACKGROUND**

On July 9, 2021, Julia Russell filed a complaint in this Court against Philip Augustus Chenevert, II, alleging that he sexually abused her when she was a young girl, and seeking damages for assault and battery and intentional infliction of emotional distress. *Compl.* (ECF No. 1). The *Russell v. Chenevert* lawsuit has now been the subject to three articles in the Portland Press Herald. The first, an article authored by the now retired columnist Bill Nemitz, was posted on July 25, 2021, shortly after Ms. Russell filed the lawsuit. *Bill Nemitz, For almost three decades, she kept her secret. No longer.*, PORTLAND PRESS HERALD (July 25, 2021). Mr. Nemitz's article quotes from the allegations in the Complaint, but also contains quotations mostly from Ms. Russell and from her attorney, Taylor Asen.

---

[1]   This amended order issues to correct a typographical error on page 8 of the Order Regarding Pretrial Publicity (ECF No. 93), filed on October 20, 2022. The word "voluntarily" is corrected to read "voluntary."

>
> The Nemitz article states:
>
> As for the civil case, also unhindered by a statute of limitations, it's not about money. Portland attorney Taylor Asen said last week that he agreed to represent Julia on a contingency basis, meaning that he gets nothing unless she wins. Meanwhile, Julia is paying upfront for a private investigator and other expenses.
>
> "I wouldn't have taken this on if I didn't find her to be as compelling as she was," Asen said. "And also, I realized that she was not doing this for herself. She's doing this because she thinks it's important for the community and she owes it to other potential victims."

*Id.* According to the opinion piece, Attorney Gene Libby, who represents Mr. Chenevert, did not respond to Mr. Nemitz's request for comment.

After the Nemitz article, two women who read the article came forward and alleged that Mr. Chenevert had committed similar acts against them when they were young. *See Order on Mot. in Limine* (ECF No. 43). On August 8, 2022, the Court issued an order, allowing these women to testify at the Russell trial in accordance with Federal Rule of Evidence 415 and First Circuit caselaw. *Id.*

On August 17, 2022, after the close of discovery, the Court set the case for a jury trial for the October term of court with jury selection scheduled for October 3, 2022, *Trial List* (ECF No. 44); *Notice of Hr'g* (ECF No. 46), and on August 30, 2022, the Court set trial for October 17, 2022 to October 21, 2022. *Notice of Am. Hr'g* (ECF No. 48).

In anticipation of jury selection, on September 15, 2022, Attorney Asen wrote Magistrate Judge Karen Wolf and noted that the case "involves a sensitive issue - - child sex abuse - - and was discussed at length in the Portland Press Herald." *Letter from Att'y Taylor Asen to Magistrate Karen Wolf* at 1 (Sept. 15, 2022) (ECF No. 49).

Attorney Asen requested the opportunity "to submit supplemental written questions for the Court to consider providing to potential jurors." *Id.* On September 16, 2022, Magistrate Judge Wolf ordered the parties to submit written questions concerning highly sensitive subjects. *Order* (ECF No. 50). Attorney Asen submitted a proposed question about whether the potential juror had "read, heard or observed anything about this case from any source, or from any individual either in the courtroom or in the community." *Pl.'s Proposed Voir Dire Questions and Req. for Written Questionnaire* at 1 (ECF No. 59). The jury venire completed written questionnaires dealing with issues of sexual abuse. On October 3, 2022, Magistrate Judge Wolf successfully presided over the selection of a jury of eight individuals with the trial set to begin on October 17, 2022. *Min. Entry* (ECF No. 73).

On October 13, 2022, between the date of jury selection and the scheduled commencement of trial, the Portland Press Herald published a second article on the lawsuit. *After Biddeford woman breaks nearly 30-year silence, 2 other women also allege abuse*, PORTLAND PRESS HERALD (Oct. 13, 2022). This article quotes from deposition transcripts and from Attorney Asen:

> According to Russell's attorney, Taylor Asen, the overlap between Russell's accounts and those of the two other women – how and where they were abused, and that the women's families had close ties to Chenevert – is so strong that it's hard to pin those similarities on coincidence.
>
> "It's scary to think that somebody could've gotten away with this for so long, with so many young women – girls, they were not women, they were girls," Asen said. . ..
>
> But for Russell, Asen said, it's not about the money, it's about the accountability.

3

> "She wants to take something from him," Asen said. "We want him to feel consequences for what he did."

Again, according to the article, Attorney Libby declined comment.

On October 13, 2022, Mr. Chenevert moved for additional voir dire in light of the contents of the October 13, 2022 Portland Press Herald article. *Mot. for Additional Voir Dire* (ECF No. 82). Ms. Russell responded to Mr. Chenevert's motion the same day. *Pl.'s Resp. to Def.'s Mot. for Additional Voir Dire* (ECF No. 84). On October 14, 2022, the Court granted Mr. Chenevert's motion and indicated to counsel that the Court would question each selected juror in chambers before the start of trial on Monday, October 17, 2022 to determine whether they had read the October 13, 2022 Portland Press Herald article. However, between jury selection and the start of trial, three members of the eight-member jury notified the Clerk's Office that they had intervening personal events that made them unavailable to participate at trial. Federal Rule of Civil Procedure 48(b) mandates that a civil jury must contain no fewer than six members "[u]nless the parties stipulate otherwise." As the size of a jury has constitutional implications, *Ballew v. Georgia*, 435 U.S. 223 (1978), the Court continued the trial after Mr. Chenevert objected. Upon consultation with counsel, on October 17, 2022, the Court reset the trial for the January term of court with jury selection scheduled for January 3, 2023 and trial for January 23, 2023. *Notice of Hr'g* (ECF No. 92).

On October 17, 2022, a third article appeared in the Portland Press Herald concerning the lawsuit. Entitled, *Biddeford sexual abuse trial rescheduled for next*

*year*, the article reiterated the background of the lawsuit and reported on the jurors' unavailability, the Court's order to continue trial, and the controversy between Ms. Russell and Mr. Chenevert about pretrial publicity. *Biddeford sexual abuse trial rescheduled for next year*, PORTLAND PRESS HERALD (Oct. 17, 2022). This time, according to the article, neither Attorney Asen nor Attorney Libby responded to the reporter's requests for comments. *Id.*

## II.  DISCUSSION

With a new trial date set for next January, the Court issues this order to provide guidance to counsel in their dealings with the media between now and the scheduled trial and verdict. To be clear, in issuing this order, the Court is not at all critical of the Portland Press Herald, its former columnist, Bill Nemitz, or its current staff writer, Emily Allen. To the contrary, the Court recognizes that a civil action by a person who claims she was abused as a child against the alleged abuser is manifestly a matter of public interest, and, in this case, Mr. Nemitz's opinion piece made public Ms. Russell's allegations against Mr. Chenevert and resulted in two women coming forward whose testimony at trial the Court ruled admissible under the rules of evidence. The Court understands and appreciates the vital and constitutional role of the Portland Press Herald in reporting on proceedings in federal court. "Access to juridical records and documents allows the citizenry to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." *United States v. Kravetz*, 706 F.3d 47, 56-57 (1st Cir. 2013) (citations omitted).

5

Instead, this order addresses the role of the attorneys and the parties in generating pretrial publicity. "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. People of State of Colo. Ex Rel Att'y Gen. of State of Colo.*, 205 U.S. 454, 462 (1907). "Where a party has properly exercised its right to a trial by jury, the party is entitled to a trial by an impartial jury." *McCue v. City of Bangor*, 1:14-cv-00098-GZS, 2014 U.S. Dist. LEXIS 102913, at *2 (D. Me. July 28, 2014). Furthermore, the Court has "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979).

When there has been pretrial publicity that could affect the right of the parties to an impartial jury, a court has several potential responses. First, a court may question the jurors "to discover if any of them were aware of or tainted by publicity discussing the trial." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 570 (1st Cir. 1989). Also, a court may consider a gag order against the parties and the attorneys. *See United States v. Babich,* No. 16-cr-10343-ADB, 2018 U.S. Dist. LEXIS 212433, at *4-5 (D. Mass. Dec. 17, 2018) (ordering that counsel "shall not make or issue any extrajudicial statement, written or oral, to any member of the news media relating to this case which could interfere with a fair trial" after finding that counsel had "made improper remarks in public statements concerning this case . . . and that there is a substantial likelihood that comments from counsel might taint the jury pool"); *United States v. Bulger*, No. 99-10371-DJC, 2013 U.S. Dist. LEXIS 91953, at *1-25 (D. Mass.

July 1, 2013) (affirming a restriction on extrajudicial statements and discussing how courts in the Second, Fifth, and Tenth Circuits have also done so); *United States v. Brown*, 218 F.3d 415, 427 (5th Cir. 2000) ("a district court may in any event impose an appropriate gag order on parties and/or their lawyers if it determines that extrajudicial commentary by those individuals would present a 'substantial likelihood' of prejudicing the court's ability to conduct a fair trial"). Third, a court may consider changing the trial venue or, if the publicity occurs during trial, more extensive jury voir dire. *McCue*, 2014 U.S. Dist. LEXIS 102913, at *3; *United States v. Quiles-Olivo*, 684 F.3d 177, 182 (1st Cir. 2012) ("Venue change on grounds of prejudice will be deemed appropriate where there is an ever-prevalent risk that the level of prejudice permeating the trial setting is so dense that a defendant cannot possibly receive an impartial trial").

Here, the Court views two periods differently. First, prepublicity before a jury is selected is read by the public at large, who do not know whether they will be called as members of the jury venire, and who are subject to questioning about their knowledge of the case during jury voir dire. Second, once a jury has been selected and is either waiting for the trial to start or is sitting during trial, the individual jurors are aware of the nature of the case, the names of the parties and the attorneys, and the fact that they are acting as jurors. In the second situation, the danger of prejudicial publicity is heightened and may require stronger medicine.

Although the Court is not ordering the attorneys not to participate in further pretrial publicity about this case, the Court reminds counsel of Maine Rule of

Professional Conduct 3.6, as adopted by Local Rule 83.3(e), which states that "[a] lawyer involved in . . . representing a party to a civil cause shall not make or participate in making any extra-judicial statement which poses a substantial danger of interference with the administration of justice." In this situation, the statements of Plaintiff's counsel about his confidence in his client's honesty, his view of the strength of his case, his client's lack of financial motivation in bringing suit, and his own altruism have run the risk of prejudicing the jury venire. At some point, the level of pretrial publicity may reach the point where the Court will order a change of venue so that the potential jurors are less likely to read the Portland Press Herald, and more likely to be unaware of the pretrial publicity. Certainly, the more publicity, the greater the likelihood of a change of venue and extensive jury voir dire, particularly if the Court concludes that one party or attorney has engaged the media.

The situation changes, as the Court has noted, once a civil jury is selected, particularly in the interval between selection and trial. The Court will consider issuing an order barring counsel from participating in media interviews about the trial during this critical phase and during the trial itself. Alternatively, the Court will accept counsels' voluntary agreement not to engage in publicity during this interval. Of course, once the verdict is issued, the parties and the attorneys will be free to discuss the case with anyone (except jurors) as they see fit.

### III. CONCLUSION

To obtain the views of counsel on these issues, the Court ORDERS that the parties respond to this order by simultaneous memoranda within fourteen days. No additional responses will be necessary unless ordered by the Court.

SO ORDERED.

                                                  <u>/s/ John A. Woodcock, Jr.</u>
                                                  JOHN A. WOODCOCK, JR.
                                                  UNITED STATES DISTRICT JUDGE

Dated this 21st day of October, 2022